IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Honey Brook Estates, LLC,     :
            Appellant     :
                     :
        v.           :    No. 1258 C.D. 2014
                     :    Argued: December 10, 2015
Board of Supervisors of Honey     :
Brook Township               :

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge[1]
              HONORABLE MARY HANNAH LEAVITT, Judge[2]
              HONORABLE P. KEVIN BROBSON, Judge

OPINION
BY JUDGE LEAVITT                      FILED: January 13, 2016

Honey Brook Estates, LLC, (Developer) appeals an order of the Court of Common Pleas of Chester County (trial court) that affirmed the decision of the Board of Supervisors of Honey Brook Township (Township) to disapprove Developer's preliminary plan for a townhouse development. Developer contends that the Township deliberately delayed action on its preliminary plan to give the Township time to rezone Developer's land from residential to agricultural. Developer contends that this bad faith conduct by the Township entitles it to a new review of its preliminary subdivision and land development plan under the zoning ordinance in effect when it filed its preliminary plan. We reverse and remand.

---

[1] This case was assigned to the opinion writer before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

## Background

On December 16, 2005, Developer purchased a 39.9-acre parcel of land, located in the Township's residential district, for $1,085,000. The Township's Zoning Ordinance[3] permitted by right "[s]ingle family ... [and] [multi] family dwelling[s]" in the residential district. ZONING ORDINANCE §27-702.[4]

On May 15, 2006, Developer learned that the Township planned to amend the Zoning Ordinance to rezone most of Developer's land from residential to agricultural. It also learned that a public hearing on the proposed zoning amendment was scheduled for June 14, 2006.

On June 13, 2006, in accordance with the Township's Subdivision and Land Development Ordinance (SALDO),[5] Developer submitted a preliminary subdivision and land development plan for a development of 78 townhouses. Developer's preliminary plan proposed to subdivide the 39.9-acre parcel into three lots. Two lots would be used for each of the existing single-family homes on the property.[6] The remainder, Lot 3, would consist of approximately 37 acres to be used for the construction of a 78-unit townhome community along with associated parking, access roads, stormwater management facilities, and a common open space area.

---

[3] HONEY BROOK TOWNSHIP ZONING ORDINANCE of 2003 (enacted March 12, 2003, and readopted by Ordinance No. 129-2007, August 2, 2007) known as Chapter 27 in the Honey Brook Township Code of Ordinances, *as amended* (Zoning Ordinance).

[4] Sections 301 and 302 of the Zoning Ordinance set forth the base zoning districts and the zoning map. ZONING ORDINANCE §§27-301 and 27-302.

[5] THE HONEY BROOK TOWNSHIP SUBDIVISION AND LAND DEVELOPMENT ORDINANCE, Ordinance No. 109-2004 (September 8, 2004), *as amended* (SALDO); Reproduced Record at 6a-168a.

[6] Because these lots were non-conforming with respect to building setbacks, the preliminary plan noted that Zoning Hearing Board approval would be needed for final plan approval.

2

On June 20, 2006, Michael L. Reinert, Township Engineer, informed Developer that its preliminary plan was incomplete and would not be forwarded to the Planning Commission. Reinert's letter identified five omissions in Developer's preliminary plan:

1. A cost estimate of all proposed improvements is noted to be included on the checklist and was not provided.

2. The checklist notes that all proposed earthmoving and grading, devices and measures to control erosion during land disturbance, and stabilization/site restoration measures are required. No erosion and sediment control plans were included with the submission. This is also required by Section 502.E of the SALDO.

3. Sewage planning modules were not submitted with the information as required by the checklist and Section 405.B.2.d.

4. Certification of the sewer & water facilities connection from the appropriate authorities is noted on the checklist and has not been provided.

5. The checklist requires that all waiver requests should be noted on the plans. There are no waiver requests noted, however a traffic impact study is required per Section 612 for residential uses in excess of 20 units. The traffic study has not been included with the submission.

Reproduced Record at 2027a (R.R. __).[7]

Ten days later, Developer submitted an amended preliminary plan that addressed each of the five items in Reinert's letter. The amended plan included a cost estimate; an erosion and sediment control plan; sewage planning information,

_____

[7] While Reinert signed the letter as the "Subdivision Officer," he testified that the Township had no designated subdivision officer at that time. Reinert Deposition, Notes of Testimony at 13-14 (N.T. __); R.R. 803a.

including the module planning forms required by the Department of Environmental Protection (DEP); copies of letters on sewer and water capacity and connection points that were sent to the appropriate authorities; the contract with the consultant engaged to do a traffic study; and, finally, a verification that waivers were not requested.

On July 5, 2006, the Township adopted Ordinance No. 119-2006 and No. 120-2006, which amended the Zoning Ordinance, effective immediately. This zoning change implemented the Township's 2006 Comprehensive Plan, which was adopted in accordance with the Pennsylvania Municipalities Planning Code (MPC).[8] A central goal of the Comprehensive Plan was the preservation of open space and limitation on further development in the Township by rezoning a large part of the Township as agricultural. The 2006 amendment rezoned most of Developer's property from residential to agricultural.

On July 10, 2006, Michael Brown, Township Manager, rejected Developer's amended preliminary plan as incomplete and informed Developer that its plan would not be allowed to "enter[ ] the review cycle." R.R. 2044a. In his disapproval letter, Brown set forth three reasons for his decision:

1. *Sewage planning modules were not submitted* with the information as required by the checklist and Section 405.B.2.d. …. The submission of a DEP postcard mailer does not satisfy this requirement.

2. *Certification of the sewer & water facilities* connection from the appropriate authorities is noted on the checklist and *has not been provided*. The submission of requests for sewer and water service from [Developer] to the applicable authorities does not comply with this requirement.

---

[8] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202.

4

Although the majority of the development is not located within the approved 537 sewer district, public sewer is proposed to serve the entire development based on the content of the designs submitted and the lack of onlot soils testing. In addition, this property is not located within the franchise area of the public water provider, nor has approval for its inclusion been obtained with this submission. Sections 622 and 623.A.2 of the Township SALDO further clarifies these requirements.

3. *The submission of a traffic impact study is required for all residential subdivision or land development proposing 20 or more dwelling units.* The proposed development contains 78 townhomes and 2 existing single family dwelling units. The response letter indicates a contractual agreement has been entered into with a qualified traffic consultant. A letter is included from the traffic consultant requesting acknowledgement of the study areas required for the completion of the study. Section 612.B indicates the study shall include an analysis of expected traffic generation to, from, and upon surrounding roads within a radius of ½ mile from the proposed development. We believe this requirement is clearly written in the Ordinance and does not require acknowledgement from the Township in order for a traffic study & report to be completed and submitted. Therefore, the submitted scoping letter from the traffic consultant does not constitute a complete traffic study and does not comply with this requirement.

R.R. 2044a-45a (emphasis added).[9] By letter, Developer objected to Brown's decision for the stated reason that the Township was imposing requirements upon Developer that had never been imposed on preliminary plan applicants and requested reconsideration.

On July 18, 2006, Township Solicitor, John E. Good, commented on Brown's advice to Developer that its amended preliminary plan would not be

---

[9] Brown conceded that he had not been appointed or designated as the Township's subdivision officer. Brown Deposition, N.T. 287; R.R. 723a.

allowed to enter the "review cycle." In a letter to Brown, Good observed that historically the Township "has been far less technical in its objections to completeness of plans" in contrast to "the position that we are taking with these recent sets of plans…." R.R. 1188a. Shortly thereafter, the Township forwarded Developer's amended preliminary plan to the Planning Commission for review. Township Brief at 9. It did so, however, without informing Developer of this change.

On August 18, 2006, Reinert submitted Developer's amended preliminary plan to the Planning Commission. In a cover letter, Reinert explained that although the Township believed the plan was incomplete,

> [o]ut of an abundance of caution the Board of Supervisors directed a review of the purported application for its compliance with the applicable ordinances of the Township in effect at the time of filing. This review does not invalidate the earlier finding that the application was substantially incomplete and should be rejected on its face.

R.R. 1268a. Reinert's letter then made 93 critical "comments" on the merits of Developer's plan. On August 24, 2006, after noting the absence of Developer from the meeting, the Planning Commission voted to recommend disapproval of Developer's amended preliminary plan by the Township.

On August 30, 2006, Developer responded to Brown's July 10, 2006, comments by submitting additional supporting documents. However, Brown returned the materials to Developer, noting that the Planning Commission had already recommended that the Township Board of Supervisors disapprove Developer's plan. On September 13, 2006, the Board of Supervisors voted to reject Developer's amended preliminary plan, based on "packages" of information prepared for its review by Brown. Brown Deposition, N.T. 301; R.R. 726a.

6

Neither the Planning Commission nor the Board of Supervisors received, or considered, any of the supplemental information Developer had sent to Brown in support of the amended plan.

On September 14, 2006, Brown advised Developer that the amended preliminary plan had been disapproved by the Board of Supervisors and cited 59 reasons for its decision. On October 6, 2006, Developer filed a land use appeal with the trial court, challenging the Township's rejection of its amended preliminary plan, asserting that irregularities in the Township's review of its plan had deprived it of the opportunity to have the plan reviewed objectively on its merits.

## Trial Court Appeal

Before the trial court, Developer requested the opportunity to present evidence of the Township's bad faith in processing its amended preliminary plan. The trial court granted both parties permission to submit evidence on the following issues: (1) the manner in which Developer's plan was processed and how that process differed from the review of other plans; (2) discussions of technical requirements or ordinance interpretation; and (3) whether Developer was afforded a reasonable opportunity to respond or modify the amended preliminary plan. The trial court cautioned that even were Developer to establish bad faith, it would also have to show that it was reasonably likely that Developer could have modified its plan to overcome the Township's objections.

Before the trial court, the parties' evidence consisted of a series of depositions that included, *inter alia*, Michael L. Reinert, Michael J. Brown and

7

Mark A. Magrecki, Developer's attorney.[10]  These depositions are summarized, briefly, *seriatim*.

Reinert explained that he is not the Township's designated subdivision officer, as specified in the SALDO.[11]  Rather, Brown directed Reinert to serve in that capacity.  Because implementation of the Township's Comprehensive Plan would require zoning changes, the Township was concerned that developers would file preliminary plans "haphazardly or irresponsibly prepared and rushed … just to beat the zoning amendment."  Reinert Deposition, N.T. 118; R.R. 1855a.  To address this problem, the Township decided to forward preliminary plans to the Planning Commission with a review letter, so that the commission could make an informed recommendation to the Board of Supervisors.  In addition, no plan would be forwarded to the Planning Commission until it was a "complete application as defined in the SALDO."  Reinert Deposition, N.T. 35; R.R. 1834a.  Reinert acknowledged that neither the public nor applicants were advised of these changes in procedure.[12]

In his deposition, Brown testified that he discussed changing the review process with the Township solicitor because of concern that the pending

---

[10] The depositions all appear to have been prepared in preparation of a lawsuit Developer has filed against the Township in the United States District Court for the Eastern District of Pennsylvania.  A copy of the federal complaint is contained in the record at R.R. 240a-63a.  The record also contains deposition testimony from several other individuals, but their statements are not referenced in Developer's brief to this Court and, thus, are not summarized herein.

[11] The SALDO states that the subdivision officer is to be "designated by the Board [of Supervisors of Honey Brook Township] to administer the provisions of this Ordinance."  SALDO §202; R.R. 23a.

[12] Brown instructed Reinert on the new procedure and directed Reinert to review preliminary plans for completeness.  Shortly thereafter, Brown decided that as Township Manager, he could act as the subdivision officer and undertake the completeness review.

revisions to the Zoning Ordinance would precipitate the filing of hastily prepared subdivision plans. The solicitor informed him that the Township can reject a plan if incomplete. Out of an abundance of caution, Brown and the solicitor decided to forward incomplete plans to the Planning Commission.

Prior to the new procedure, Brown could not recall a single instance where a preliminary plan was not submitted to the Planning Commission as a matter of course. Likewise, Brown could not recall a single occasion where a landowner was not present for a meeting where the Planning Commission considered the landowner's preliminary plan. When asked how the landowner would know that its preliminary plan would be reviewed by the Planning Commission, Brown stated that, generally, the Township Engineer sends a review letter to an applicant, and this will "trigger an applicant's awareness that its application would be coming up before the planning commission" and, thus, know to show up at the next meeting. Brown Deposition, N.T. 294; R.R. 1776a. Landowners periodically telephone the office to learn what projects are on the Planning Commission agenda. When asked how Developer could possibly know that its preliminary plan would be considered by the Planning Commission, particularly since it had been advised that it would *not* be forwarded to the Planning Commission, Brown was not sure. Brown stated "[t]he only way they would have known is if they got a copy of a review letter in advance." Brown Deposition, N.T. 295; R.R. 1776a.

Magrecki, counsel for Developer, was also deposed. He explained that Developer retained him in 2006 to assist in the development of its 39.9-acre parcel. Magrecki stated that rezoning Developer's property to an agricultural district rendered it virtually worthless. Because Developer's right to use the

9

property as residential would vest if it filed a preliminary plan before the new zoning was enacted, Magrecki made sure that the preliminary plan was filed in time.

Magrecki testified about the Township's past practice. He explained that typically the Township Engineer reviews a preliminary plan, and this is followed by a back and forth discussion. That did not happen in this case. Instead, Reinert rejected the plan pre-emptively. Magrecki discussed the rejection with Reinert, particularly the traffic study. Magrecki stated that because a traffic study is expensive, it is standard to wait for the Planning Commission's input. He explained, "[y]ou don't lead with a traffic impact study." Magrecki Deposition, N.T. 177; R.R. 1330a. Magrecki testified that Reinert told him that a letter outlining the scope of the traffic study would be adequate, but afterwards denied making such a comment.

Magrecki challenged Reinert's June 20, 2006, objection that the plan lacked a cost estimate, explaining that a cost estimate is premature at the preliminary plan stage. The rejection for lack of an erosion and sediment plan was unfounded because DEP strictly governs this process. Magrecki did not understand Reinert's sewage planning objection because the preliminary plan made clear Developer was pursuing public sewage. Certification for sewer and water facilities requires Township support and cannot be obtained in advance of filing a preliminary plan.

In any case, Developer filed an amended preliminary plan to address Reinert's five stated reasons for rejecting the plan as incomplete. Thereafter, Brown rejected the amended plan without giving Developer an opportunity to address Brown's three new objections. Magrecki testified that none of the three

objections listed by Brown constituted a valid reason for removing a preliminary plan from the "review cycle."

The first reason cited by Brown related to the sewage district. Magrecki explained that DEP, not the Township, is responsible for sewage treatment and disposal. Developer could only file the "module mailer postcard to DEP" and wait for DEP to start to process. Magrecki Deposition, N.T. 208; R.R. 1338a.

The second reason was the lack of certification for sewer and water facility connection. Magrecki explained that proposed connections cannot be certified until a preliminary plan is approved. It "is usual and customary to be worked out as you move through the review and approval cycle. It is an approval requirement, but it's not a submission requirement." Magrecki Deposition, N.T. 214; R.R. 1340a.

Brown's third and final reason for objecting to the amended plan related to the traffic impact study. In the amended preliminary plan, Developer included its contract with a qualified traffic consultant as well as a copy of the consultant's letter identifying the areas to be studied. Brown found the contract inadequate because the study did not state it would examine the surrounding roads within a half mile radius of the proposed development. Magrecki stated this was not a valid objection because the specifics of the traffic study are for the Planning Commission to determine.

Magrecki testified that after receiving Brown's letter, he made telephone calls and sent letters to the Township seeking reconsideration. He attempted to provide supplemental information to the Township, which was refused. Brown never informed Magrecki that the Planning Commission or the

11

Board of Supervisors would be acting upon Developer's preliminary plan. To the contrary, Brown advised him that Developer's plan had been removed from the review cycle. Magrecki was, accordingly, confused by the Board of Supervisors' disapproval, done on the basis of supplemental information provided by Reinert and Brown without Developer's knowledge. At the same time, Reinert and Brown refused to accept Developer's supplemental information or forward it to the Planning Commission.

The trial court affirmed the decision of the Board of Supervisors for the stated reason that the actions of the Township did not rise to the level of bad faith. Trial Court op. of June 30, 2014; R.R. 2197a. In its Pennsylvania Rule of Appellate Procedure 1925(a)[13] opinion to this Court, the trial court further explained that even if Developer had demonstrated bad faith on the part of the Township, it would not make a case unless it could also establish that Developer could have modified its preliminary plan to the Township's satisfaction. This did not seem likely to the trial court, which noted that "'denial of approval for a plan can stand if supported by any one of the reasons set forth for denial.'" Trial court 1925(a) op. at 3 (quoting *Kassouf v. Township of Scott*, 883 A.2d 463, 473 (Pa. 2005) (citing *Goodman v. Board of Commissioners of the Township of South*

---

[13] It provides that

> the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.

PA. R.A.P. 1925(a)(1).

*Whitehall*, 411 A.2d 838, 840 (Pa. Cmwlth. 1980))).[14]   The trial court rejected Developer's argument that its preliminary plan had been rejected in bad faith, asserting that a wholesale modification of Developer's preliminary plan would have been necessary in order to satisfy "the ordinances in existence as of the date upon which the application was first presented to [the] Township."[15]   Trial court 1925(a) op. at 7.

## Appeal to Commonwealth Court

On appeal,[16] Developer argues that the trial court erred in holding the Township did not act in bad faith.  Developer contends that the evidence shows, overwhelmingly, that the Township did not process Developer's preliminary plan in an objective manner but, rather, acted to derail its approval.  Specifically, the Township refused to meet with Developer to discuss the preliminary plan or revisions; rejected the plan as incomplete; and then sent the "incomplete" plan to the Planning Commission after informing Developer that the plan had been pulled from the review cycle.  The Township's refusal to discuss the preliminary plan with Developer was unprecedented.  Developer also contends that the trial court erred by concluding that the alleged defects in the plans were either substantial or incapable of correction.

---

[14] While denial of a plan is proper if supported by any one of the reasons for denial, this presupposes that a good faith review occurred.  In *Goodman* the developer claimed that the board's denial of its preliminary plan was based on findings inadequate as a matter of law.  The developer was not purporting that bad faith had tainted the review.

[15] The trial court does not identify which of the Township's 59 objections to Developer's amended preliminary plan constituted fundamental defects not subject to modification.

[16] Where, as here, the trial court takes additional evidence, our standard of review is whether the trial court abused its discretion or committed an error of law.  *Larock v. Board of Supervisors of Sugarloaf Township*, 961 A.2d 916, 923 n.3 (Pa. Cmwlth. 2008).

13

## Analysis

We begin with a review of the precedent relevant where a landowner asserts that bad faith has tainted a municipality's review of a preliminary subdivision and land development plan. The leading cases are *Raum v. Board of Supervisors of Tredyffrin Township*, 370 A.2d 777 (Pa. Cmwlth. 1977), and *Highway Materials, Inc. v. Board of Supervisors of Whitemarsh Township*, 974 A.2d 539 (Pa. Cmwlth. 2009).

In *Raum*, 370 A.2d 777, a landowner filed a subdivision plan. Seventy-eight days later, and two days before the township was scheduled to act on a proposed rezoning of the landowner's property, the planning commission disapproved the landowner's subdivision plan for the stated reasons that it contained "more information than required" and because three of the 19 lots required further subdivision because they were bisected by roads. *Raum*, 370 A.2d at 802. The landowner filed a modification to the plan within the two days available, but the municipality refused to consider the modifications. We held that the township acted in bad faith and, thus, the landowner was entitled to have its plan approved.

We reasoned that a municipality has a legal obligation to act in good faith upon any proposed subdivision and land development plan. *Id*. at 798. This duty

> includes discussing matters involving technical requirements or ordinance interpretation with an applicant, and providing an applicant a reasonable opportunity to respond to objections or to modify plans where there has been a misunderstanding or difference of opinion.

14

*Id*. Further, an applicant has a "vested right" to develop property in accordance with the zoning in effect at the time his application is filed. *Id.* at 797.[17] A landowner "cannot be denied this right by a change in zoning." *Id.* By waiting until the last possible moment to raise objections and then claiming there was insufficient time to consider the modified plan, the township acted in bad faith. Notably, the township had departed from prior practice by, *inter alia*, refusing to engage in a dialogue with the landowner.

In *Highway Materials*, 974 A.2d 539, a landowner sought to develop its property in an industrial district and to that end filed a preliminary plan. At the time, the township was considering a zoning change that would rezone the landowner's property from industrial to residential. The township engineer requested more information on the sewer design and noted that the preliminary plan did not include a 15-foot berm, chain link fence with barbed wire or adequate

---

[17] Pursuant to Section 508(4)(i) of the MPC, while an application is pending approval:

> [N]o change or amendment of the zoning, subdivision or other governing ordinance or plan shall affect the decision on such application adversely to the applicant and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed.

53 P.S. §10508(4)(i). Section 508(4) of the MPC modified the common law version of the "pending ordinance doctrine," which rendered a landowner's use non-conforming once the ordinance was pending. *Lehigh Asphalt Paving and Construction Company v. Board of Supervisors of East Penn Township*, 830 A.2d 1063, 1067 n.3 (Pa. Cmwlth. 2003). Essentially, the MPC

> establishes an exception to the common law rule, which operates to protect a landowner/applicant. Under Section 508(4), *as amended*, 53 P.S. §10508(4), while an application for subdivision or land development is pending, no change in the applicable ordinances shall adversely affect the municipality's decision on those plans.

*Id.* (internal citations omitted) (emphasis omitted).

storm water detention. The landowner responded with a revised preliminary plan that included two sewer proposals. The planning commission rejected the preliminary plan, and the landowner appealed. The trial court reversed. It found it relevant that the landowner had asked the township for input on whether a water basin could be located on the property, and the township responded that it was not going to help the developer "on a controversial development." *Highway Materials*, 974 A.2d at 544. Further, when the landowner sought direction on the sewer system and on the fence and berm, the township did not respond. On these facts, the trial court held that the township "did not proceed in good faith in advising [landowner] as to how to correct the defects in its plan, [and] it did not afford [landowner] the opportunity to cure the deficiencies." *Id.* at 545.

This Court affirmed the trial court. We noted that the landowner requested input by the township and made requests for extension that were denied, thereby denying the landowner an opportunity to correct the plan. On that basis we remanded to the township for further review.

With this precedent in mind, we turn to the instant appeal. The Township acknowledges that Developer was the first to have its preliminary plan rejected for incompleteness but notes that Developer is not alone. The Township subsequently rejected other preliminary plans for that reason. Thus, Developer was not treated differently than other similarly situated landowners. Developer responds that the Township cannot defeat the charge of disparate treatment because it later treated other applicants unfairly.

The record in this case is voluminous, *i.e.*, several thousand pages, consisting of extensive witness testimony, documents and correspondence. The trial court concluded that Developer did not prove bad faith by the Township, but it

offered no discussion of the record evidence. We reject the trial court's conclusion.

> *Raum* established the elements of good faith as follows:
>
> A municipality has a legal obligation to proceed in good faith in reviewing and processing development plans. *The duty of good faith includes discussing matters involving technical requirements or ordinance interpretation with an applicant, and providing an applicant a reasonable opportunity to respond* to objections or to modify plans where there has been a misunderstanding or difference of opinion.

*Raum*, 370 A.2d at 798 (emphasis added).[18] The record shows that the Township rejected Developer's preliminary plan in both its original and amended form, without giving Developer the opportunity to confer with the Township. The Township rejected Developer's first preliminary plan for five stated reasons, to which Developer responded with an amendment addressed to each of the five reasons. The Township then found three new reasons to object. After telling Developer that its plan was incomplete and would *not* be sent to the Planning Commission for review, the Township did an about face and sent it to the Planning Commission. It did so without informing Developer of this change in the review process or giving Developer an opportunity to present supplemental information to the Planning Commission. At the same time, the Township offered the Planning Commission volumes of additional materials and new reasons why Developer's amended preliminary plan should be denied. By the time Developer's preliminary plan made its way to the Planning Commission and the Board of Supervisors, the

---

[18] The above-quoted excerpt from *Raum* was quoted with approval in *Highway Materials*, 974 A.2d at 544.

17

Township's objections had expanded in number from five to 59 (albeit down from 93). R.R. 169a-179a.

The evidence of record, including the admissions by the Township officials Reinert and Brown, establishes that the preliminary plans were rejected with no opportunity for Developer to respond. This constitutes bad faith under *Raum* and *Highway Materials*, and we reject the trial court's contrary conclusion.

We turn, next, to Developer's claim that the trial court erred in finding remand would be futile for the stated reason that Developer's amended plan was incapable of being revised satisfactorily. In so holding, the trial court did not identify which of the reasons for rejecting Developer's preliminary plan were incapable of correction.

In its brief to this Court, the Township offers three reasons to support the trial court's conclusion that the amended preliminary plan was incapable of correction. First, the property is not entirely within the Township's sewer district and, thus, cannot be served by public sewer, as required by Section 27-703 of the Zoning Ordinance.[19] Second, Developer proposes 78 units on the property, but the density requirements limit the development to 76 units. Third, Developer proposed public water service, but the property is not located within the Public Utility Commission's (PUC) water service area. Developer contends that each of these purported deficiencies is correctable or, alternatively, illegal.

First, Developer argues that, as a matter of law, a township cannot require that lots be served by public sewer and then refuse to allow a public sewer. In *Council of Middletown Township v. Benham*, 523 A.2d 311, 317 (Pa. 1987), it

---

[19] It requires "[a]s a prerequisite for approval, any lot must demonstrate the capability to be served by public water and public sewer." ZONING ORDINANCE §27-703.

18

was established that a "township cannot preclude development by a zoning requirement that developers use non-existent municipal services." Therefore, the Township was under an obligation either to extend the public sewer service or give Developer an opportunity to modify its plans to provide for an alternative means of providing for sewer service.

Second, Developer posits that the density of the proposed development is easily remedied by reducing the proposed units from 78 to 76. In any case, neither Reinert nor Brown listed this as an objection to Developer's preliminary plan in either its original or amended version.

Third, Developer asserts that the public water requirement is easily addressed. It is true that the property is not currently in the public water service area, but this does not mean that service is not available. PUC water franchise areas are expanded all the time. At most, the requirement can be included as a condition of plan approval, not a reason to reject a preliminary plan. *See Morris v. South Coventry Township Board of Supervisors*, 836 A.2d 1015, 1026 (Pa. Cmwlth. 2003) ("[W]here an outside agency's approval is required, the municipality should condition final approval upon obtaining a permit, rather than denying preliminary approval of the land development application.").

We agree with Developer. The density requirement can be easily modified, and sewer and water requirements are not fatal to the preliminary plan. In *CACO Three, Inc. v. Board of Supervisors of Huntington Township*, 845 A.2d 991 (Pa. Cmwlth. 2004), this Court explained that a preliminary plan does not need to contain "sufficient details for the sewer system." *Id*. at 996. Instead, it was "more reasonable and consistent … to condition final approval of the development plan upon obtaining all the required permits from the DEP, rather than rejecting the

19

plan outright." *Id*. at 996-97. We reached the same conclusion when addressing the developer's "potable water supply system" requirements. *Id*. at 997-98. We held that failure to provide design details is "not critical in the preliminary plan approval stage." *Id*. at 997. The developer established that it filed applications with "DEP and other authorities seeking approval for the proposed private water supply system;" therefore, the "[b]oard should have approved the preliminary plan subject to a condition that [the developer] must obtain the required permits for final approval." *Id*. at 997-98.

The Township attempts to justify its actions by referencing Section 405 of the SALDO, which states:

> The Subdivision Officer shall make a preliminary review of the application. If the Subdivision Officer determines that the application is defective on its face, he shall notify the applicant, and the application is deemed not accepted.

SALDO §405.C.2; R.R. 29a. It claims that Developer's preliminary plan was "defective on its face." We disagree.

The Township did not establish a facially defective preliminary plan. It offers three reasons to support that conclusion, but each is easily addressed, as discussed above. Accordingly, the Township did not establish that Developer's preliminary plan was facially defective and incapable of meeting the requirements of the Township's land use ordinances.

**Conclusion**

For the above-stated reasons, we reverse the decision of the trial court and remand this matter to the Board of Supervisors with instructions that it review Developer's amended preliminary plan under the Zoning Ordinance in existence at the time the plan was filed; provide input on technical requirements and ordinance

20

interpretation; identify objections and provide Developer the opportunity to respond to the objections.

_____

MARY HANNAH LEAVITT, Judge

Judge Cohn Jubelirer and Judge Covey did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Honey Brook Estates, LLC,        :
             Appellant     :
                           :
            v.            :   No. 1258 C.D. 2014
                           :
Board of Supervisors of Honey  :
Brook Township              :

AND NOW, this 13th day of January, 2016, the order of the Court of Common Pleas of Chester County, filed June 30, 2014, is hereby REVERSED and the matter is REMANDED, with the instruction that it be REMANDED to the Board of Supervisors of Honey Brook Township to conduct review in accordance with the attached opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, Judge