# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deborah A. Ames, George C.                     :
Stewart and Joanne C. Stewart,                 :
David Moore and Carl J. Bish and               :
Borough of Indiana                             :
                                               :  No.  1499 C.D. 2016
                v.                             :
                                               :
The Planning Commission of Indiana             :
Borough, Indiana County, and                   :
B&L Properties, II, L.P.                        :
                                               :
Appeal of:  The Planning Commission            :
of Indiana Borough, Indiana County             :
and Borough of Indiana                         :


Deborah A. Ames, George C.                     :
Stewart and Joanne C. Stewart,                 :
David Moore and Carl J. Bish and               :
Borough of Indiana                             :
                                               :  No.  1500 C.D. 2016
                v.                             :
                                               :  Argued:  November 13, 2017
The Planning Commission of Indiana             :
Borough, Indiana County, and                   :
B&L Properties, II, L.P.                        :
                                               :
Appeal of:  Deborah A. Ames, George            :
C. Stewart and Joanne C. Stewart,              :
David Moore and Carl J. Bish                   :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                    FILED:  December 7, 2017


        Deborah A. Ames, George G. Stewart, Joanne C. Stewart, David Moore, and Carl J. Bish, and Intervenor, the Borough of Indiana, (collectively, Appellants) appeal from the August 4, 2016 order of the Court of Common Pleas of Indiana County (trial court) granting the land use appeal filed by Appellants, vacating the approval by the Planning Commission of Indiana Borough (Commission) of B & L Properties II, L.P. (B&L)'s final land development plan for a student housing project at 931 Oakland Avenue, and remanding to the Borough of Indiana (Borough) with instructions to review the final plan, provide input and objections, and allow B&L an opportunity to respond.

**Facts and Procedural History**

        This matter was previously before this Court in *Deborah A. Ames, George G. Stewart and Joanne C. Stewart, David Moore and Carl J. Bish, and Borough of Indiana v. Planning Commission of Indiana Borough, Indiana County, and B & L Properties II, L.P.*, (Pa. Cmwlth., No. 1158 C.D. 2014, filed July 7, 2015), from which we garner the following facts and procedural history.

        In the fall of 2006, the Borough amended its zoning ordinance (Ordinance) to implement a Traditional Neighborhood Development  Overlay Zoning District (TND District).  The TND District was established to:  provide for high-density, pedestrian-friendly development options in the immediate vicinity of the Indiana University of Pennsylvania (IUP) campus; provide for concentrated areas of

high quality student housing; and create a transitional area between residential districts and university or commercial development areas. *Ames*, slip op. at 1-2.

Section 405-6 of the Borough's code and section 460-7 of the Ordinance delegate exclusive authority to the Commission to examine proposed subdivisions and land developments and approve or deny them, with or without conditions. Approval for projects in the TND District is subject to the process set forth in the Borough's subdivision and land development ordinance (SALDO). (Borough Code Chapter 405).[1] The Commission is also authorized by section 405-32 of the Ordinance to grant modifications from the SALDO's requirements.[2] *See* section 512.1 of the MPC, added

---

[1] Section 501 of the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10501, states that the governing body of each municipality may regulate subdivision and land development within the municipality by enacting a subdivision and land development ordinance.

[2] Section 405-32 of the Borough Code sets forth the following procedure that must be followed when a modification is requested, considered, and granted:

> A. The Planning Commission may grant a modification of the requirements of one or more provisions of this chapter if the literal enforcement will exact undue hardship because of peculiar conditions pertaining to the land in question, provided that such modification will not be contrary to the public interest and that the purpose and intent of the chapter is observed.

> B. All requests for modification shall be in writing and shall be included in the application for development. The request shall state in full the grounds and facts of unreasonableness or hardship on which the request is based, the provision or provisions of the ordinance involved, and the minimum modification necessary.

> C. The modification, if authorized, will represent the minimum deviation that will afford relief and will represent the least modification possible of the regulation in issue.

by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10512.1 (Modifications). *Ames*, slip op. at 2-3.

In March 2012, B&L submitted a land development plan to the Commission proposing to raze an existing bed and breakfast and construct in its place two attached units, each approximately 40' x 70' in area, including 10 four-bedroom apartments. Ames and Smith, owners of neighboring properties, expressed concern regarding access to the property and the property line dividing their properties. The Commission requested additional information from B&L to determine whether the proposed project satisfied the TND requirements. *Ames*, slip op. at 3.

On April 17, 2013, the Commission granted preliminary approval for the plan subject to nine conditions, including clarification by the Borough solicitor and planning consultant regarding front yard setback requirements. *Ames*, slip op. at 3.

By letter dated May 24, 2013, the Commission informed B&L that it had granted final approval of the project. On June 17, 2013, Appellants Ames, Stewart, Moore, and Bish filed a land use appeal, alleging that the Commission had no authority to grant zoning variances and should have required B&L to seek variances from the

---

D. The condition leading to the request for modification shall not have been created by the applicant.

E. The Planning Commission shall keep a written record of all action on requests for modification.

F. The specific wording of the modification shall be written in ink upon the recording tracing and signed and dated by the Chairman of the Planning Commission, if the modification is granted. If the modification is denied, the owner and/or developer may not again submit the same application for modification for at least one year after such rejection.

*Ames*, slip op. at 2 n.2.

Borough's zoning hearing board. More specifically, the Appellants alleged that the Commission disregarded section 460-69(D) of the Ordinance, which stated that no front yard area shall exceed 12 feet from an existing street right-of-way or the edge of a sidewalk, as well as applicable design standards for the TND District. *Ames*, slip op. at 4.

After the Commission's grant of final plan approval in May 2013, the TND Ordinance provision was repealed in July 2013, and members of both the Commission and the Borough Council were replaced. *Ames*, slip op. at 4.

On August 30, 2013, the Borough filed a petition to intervene in the land use appeal. The petition alleged that: the Borough's solicitor had entered an appearance on behalf of the Commission without the Borough's approval; the Borough's position was contrary to that of the Commission; the Borough had instructed the solicitor to withdraw his appearance; and the Borough sought to intervene in support of the parties appealing from the Commission's decision.[3] The petition further alleged that the Commission was not authorized to appeal land use decisions, hire legal counsel, or appear in court as a party to any land use matter. *Ames*, slip op. at 4.

B&L filed an answer and new matter, asserting that the Borough and the Commission were the same party; that the Borough's delay would prejudice B&L's rights; and that the Borough's rights were adequately represented. *See* Pa.R.C.P. No. 2329. B&L also noted that the Borough was sharing legal counsel with the appealing parties, who are competitors of B&L.[4] The trial court held a hearing on the petition

---

[3] In subsequent pleadings, the Borough included the Commission and appeared to be acting on its behalf.

[4] As an example, Moore owns a property adjacent to the proposed development that consists of seven units and houses 25 students. *Ames*, slip op. at 5 n.3.

4

and granted the Borough permission to intervene by order dated September 10, 2013. *Ames*, slip op. at 4-5.

B&L also filed an answer and new matter to the land use appeal, essentially asserting that the Commission properly approved the proposed development and had authority to do so. *Ames*, slip op. at 5.

The trial court held a hearing on the land use appeal on March 11, 2014, to "supplement" the record. The trial court stated that it wished clarification with respect to three issues: (1) the location of ingress and egress "with regard to the second building"; (2) the status of the adjacent private alley; and (3) side lot buffers. The trial court acknowledged that the record before the Commission did not include any testimony given under oath, but consisted only of minutes of Commission meetings. The trial court observed that it could have remanded the matter in order to develop a record but "wanted the parties to have some closure." *Ames*, slip op. at 5.

During the brief hearing, Tina Moore, a neighboring property owner, and Brent Young, B&L's Professional Engineer, testified. Young testified that there was only *one* building, separated into two parts that, as initially planned, did not have interior access to each other. He also explained to the trial court that a fire wall was not required as he initially believed, and he said that the building code defined the unit as one building. Drawings of the proposed project showed one large structure. *Ames*, slip op. at 5.

The trial court granted Appellants' appeal. In its opinion dated June 5, 2014, the trial court first stated that it took evidence not to supplement the record but to aid the trial court's understanding of the record filed. Citing *Rouse/Chamberlain, Inc. v. Board of Supervisors of Charlestown Township*, 504 A.2d 375 (Pa. Cmwlth.

5

1986), the trial court then stated that it could only review the record to determine if the Commission committed an abuse of discretion or error of law. *Ames*, slip op. at 6.

After setting forth the relevant law, the trial court reached two conclusions: (1) the plans submitted by B&L contained elements that did not comply with the TND Ordinance provisions; and (2) neither B&L nor the Commission followed mandatory procedures to request reasonable modifications. The trial court based these conclusions on specific facts. First, the trial court found that the project consisted of two distinct buildings. Next, quoting section 460-70(B) of the Ordinance (providing that buildings "shall be located to front toward and relate to public streets, both functionally and visually, to the greatest extent possible"), the trial court found that the eastern building did not front toward the public street either functionally or visually. The trial court also observed that while section 460-69(D) of the Ordinance required that no front yard area exceed 12 feet from an existing right of way or sidewalk, the southern corner of the proposed western building was approximately 32 feet from the existing right-of-way. Both Ordinance provisions were requirements in the TND District. *Ames*, slip op. at 6.

On appeal to this Court, B&L argued that the trial court erred because section 460-70(B) of the Ordinance was not mandatory but merely advisory and strict compliance with section 460-69(D) of the Ordinance would conflict with other applicable Ordinance provisions. *Ames*, slip. op. at 6.

As a threshold matter, this Court looked at the applicable scope of our appellate review. We noted that, in zoning cases, our scope of review depends on whether or not the trial court took new evidence. *Coal Gas Recovery, L.P. v. Franklin Township Zoning Hearing Board*, 944 A.2d 832, 837 (Pa. Cmwlth. 2008). Where the trial court does not take additional evidence, we are limited to determining whether a

6

planning commission committed an error of law or abused its discretion. *Ruf v. Buckingham Township*, 765 A.2d 1166, 1168 n.2 (Pa. Cmwlth. 2001). If the trial court accepts additional evidence on the merits, it must review the case *de novo*, and we then review the *trial court's* decision for an error of law or abuse of discretion. *Coal Gas Recovery,* 944 A.2d at 838. *Ames*, slip op. at 7.

We concluded that Appellants were correct in their assertion that the trial court made additional findings, and so we reviewed the trial court's decision to determine whether it committed an error of law or abused its discretion. We noted, however, that despite taking additional evidence, the trial court mischaracterized its review as a strictly appellate proceeding. Most importantly, we stated that, because the trial court limited the evidence presented at the hearing, the parties were denied the opportunity for a full and fair hearing, and this Court was not presented with a record sufficient for meaningful appellate review. Accordingly, we vacated the trial court's order and remanded this matter to the trial court to conduct a new hearing on Appellants' appeal from the Commission's approval of B&L's final land development plan. *Ames*, slip op. at 7-8.

On remand, the trial court held a status conference with the parties on October 22, 2015, at which point it scheduled a *de novo* hearing. The parties subsequently filed a joint stipulation regarding the *de novo* hearing on remand, agreeing that the hearing would serve as a full and final evidentiary hearing to address:

> (a) Whether the Planning Commission abused its discretion and/or committed errors of law in approving B&L's Land Development Plan for failure to comply with the following provisions of: the Municipalities Planning Code, 53 P.S. §10201 [sic] *et seq*; Indiana Borough Zoning Ordinance ("IBZO"); Traditional Neighborhood Overlay District Design Standards ("TNO Standards"); and the Subdivision

7

and Land Development Ordinance ("SALDO") as applicable; and the Conditions of B&L's Preliminary Approval:

> (i) IBZO 460.70.B;
> (ii) IBZO 460.70.G;
> (iii) IBZO 460.64.C;
> (iv) Condition No. 2, Preliminary Approval and IBZO 460.69.B;
> (v) Condition No. 1, Preliminary Approval and IBZO 460.69.D;
> (vi) Condition No. 5, Preliminary Approval;
> (vii) TNO Standards Part 3. Part B. *Street Orientation*
> (viii) TNO Standards Part 3. Part A. *Primary Structures*;
> (ix) TNO Standards Part 3. Part F. *Semi- Public Space Widths*[;]
> (x) TNO Standards Part 3. Part G. *Built-to Line Delineation*;
> (xi) TNO Standards Part 3. Part H. *Public Access*;
> (xii) TNO Standards Part 3. Part I;
> (xiii) TNO Standards Part 3. Part J. *Street Amenities*;
> (xiv) TNO Standards Part 4. Part C. *Building Mass*;
> (xv) TNO Standards Part 4. Part E. *Building Offsets*;
> (xvi) TNO Standards Part 4. Part F. *Roofline Offsets*;

(b) Whether the the [sic] TNO Standards are non-mandatory guidelines or mandatory requirements?

(c) Whether any deviations from the IBZO required variances from the Indiana Borough Zoning Hearing Board?

(R.R. at 148a-49a.)

Pertinent here, the joint stipulation went on to state, "After the *De Novo Hearing* and receipt of transcripts, the Parties will address legal arguments in support of their positions by submitting briefs by February 25, 201[6]." (R.R. at 149a.)

8

The trial court held the *de novo* hearing on February 4, 2016. B&L submitted a final brief in opposition to land use appeal, which raised, *inter alia*, arguments that the Borough acted in bad faith and that B&L had a vested right to develop the property in accordance with TND requirements. (R.R. at 513.3a, 513.9a.) Appellants submitted joint proposed findings of fact and conclusions of law. Subsequently, Appellants filed a joint motion to strike issues outside of the joint stipulation and court order, arguing that B&L's final brief in opposition raised issues not presented in the parties' joint stipulation and requesting the court strike those portions of the brief outside the scope of the stipulation.

After hearing oral argument, the trial court denied the motion to strike and directed the Appellants to file supplemental joint proposed findings of fact and conclusions of law. The trial court then reviewed the case *de novo*.

The court initially considered whether B&L's final plan complied with the requirements of the Ordinance. Noting that the parties agreed to submit into evidence the reproduced record from *Ames*, the trial court considered that the only new evidence submitted consisted of testimony presented at the February 4, 2016 hearing. Specifically, B&L presented the testimony of Brent Young, a civil and structural engineer, and Brian Slotter, a principal owner of B&L. Appellants presented the testimony of Otto Peterson, code director and zoning officer for the Borough.

The court concluded that there was "no new, relevant, substantive testimony or evidence presented at the [*de novo*] hearing" that changed the court's prior opinion that the final plan did not comply with provisions of the Ordinance. (Trial court op. at 9.) The court then proceeded to restate portions of its prior June 5, 2014 opinion, including its conclusions that the plans submitted by B&L contained elements that did not comply with the TND requirements and that neither B&L nor the

Commission followed mandatory procedures to request reasonable modifications. The court acknowledged the argument of the Appellants that the final plan did not comply in numerous other respects than those it listed, but stated that the resolution of those issues was unnecessary given its discussion of B&L's vested rights.

Before the court, B&L argued that, as a developer, it had the right to develop the real property it purchased in accordance with the provisions of the Ordinance and TND requirements existing at the time of its application for development. The court applied *Honey Brook Estates, LLC v. Board of Supervisors of Honey Brook Township*, 132 A.3d 611 (Pa. Cmwlth. 2016), and the cases discussed therein, *Raum v. Board of Supervisors of Tredyffrin Township*, 370 A.2d 777 (Pa. Cmwlth. 1977), and *Highway Materials, Inc. v. Board of Supervisors of Whitemarsh Township*, 974 A.2d 539 (Pa. Cmwlth. 2009), and noted the following factual similarities between the cases: the developer paid a "considerable premium" for the property because it could be developed in accordance with the provisions of the existing zoning ordinance, and after the municipality's decision regarding the developmental plan, the relevant portions of the existing zoning ordinance were rescinded/modified. (Trial court op. at 20-21.)

However, the trial court identified what it considered to be a critical distinction: here, the reviewing municipal entity, the Commission, approved B&L's development plan, which the court believed made B&L's vested rights argument even more compelling. The court then reviewed the petition to intervene filed by the Borough, summarizing it as follows:

> [T]he Borough of Indiana established the Indiana Borough Planning Commission, delegated power and authority to the Planning Commission to accept land use applications/plans and issue approvals and denials of land use applications/plans. However, in this matter, since the

10

Borough disagreed with the decisions of the Planning Commission, it stripped the Planning Commission of counsel,[] and never permitted the Planning Commission to hire independent counsel.

(Trial court op. at 22-23) (citations omitted). The court noted that, despite the Borough's representations to the contrary, it appeared that the Commission was now in agreement with the positions and views of the individual Appellants and the Borough,[5] and as such, the Commission was now arguing that its own actions were improper and requesting that the court reverse them. Moreover, the court noted that the individual Appellants, the Borough, and the Commission were represented by the same law firm, despite the Borough's repeated statements that its position was contrary to that of the Commission.

These actions, the court found, "escape[d] logical explanation without reaching the conclusion that the Borough [had] a settled purpose to prevent B&L from developing the property," even though the final plan could be executed in compliance with the applicable standards of the MPC, the Ordinance, including the TND provisions, and the SALDO. (Trial court op. at 24.) The court determined that the "inherent unfairness" of the circumstances made B&L's vested rights argument even more compelling than those presented to this Court in *Honey Brook*, *Raum*, and *Highway Materials, Inc.*

Finally, the court observed that there was "absolutely nothing that B&L could have done differently to avoid this situation," noting that B&L had submitted a development plan, worked with the Commission in good faith, made all changes suggested by the Commission, and had received approval. (Trial court op. at 25.)

---

[5] The court stated that this was evidenced by Appellants' joint proposed findings of fact and conclusions of law that requested relief in the form of reversal of the Planning Commission's grant of B&L's land development plan. (R.R. at 498a.)

11

Instead, it stated that the situation was created by the malfeasance of the Borough and the Commission.

The trial court, however, acknowledged that Appellants did have the right to have the property developed in accordance with the Ordinance. To the extent that the final plan was deficient for failure to comply with several sections of the Ordinance, conditions of the preliminary approval letter, and TND requirements,[6] the court found that "[e]ach and every deficiency concern[ed] technical design issue[s] that [could] be addressed and corrected with competent assistance, communication, and cooperation. Accordingly, the court determined that B&L's vested rights argument had merit and remanded to the Borough with instructions to review the final plan in light of the Ordinance in existence at the time the plan was filed, provide input on the technical requirements and Ordinance interpretation, identify objections, and allow the B&L to respond to objections through the submission of a revised plan.

**Discussion**

On appeal,[7] Appellants and the Commission argue that the trial court erred in: (1) considering the new arguments B&L raised regarding bad faith because they were outside the scope of the joint stipulation; (2) holding that the Borough and Commission acted in bad faith by intervening in the land use appeal in support of

---

[6] The court recited the specific sections of the Ordinance that the final plan allegedly did not comply with, which included: Architectural Design Standards, §§460-70(B), (C) (addressing design standards for building); Lot Density and Coverage, §460-69 (addressing side, front, and rear yard issues and structural coverage); Conditions 1, 2, and 5 from the preliminary approval letter (addressing front yard setbacks, a vegetative buffer, and the widening of a porch, respectively); and TND requirements.

[7] Our scope of review is to determine whether the trial court, acting *de novo*, committed legal error or abused its discretion. *LHT Associates, LLC v. Township of Hampton*, 809 A.2d 1072, 1075 n.1 (Pa. Cmwlth. 2002).

individual Appellants and in opposition to the grant of final approval; and (3) assuming that B&L's final plan was capable of correction under the then-existing Ordinance and failing to fully address most of the deficiencies identified in the joint stipulation.

Appellants first argue that the trial court erred in considering B&L's bad faith and vested rights arguments since those issues were outside the scope of the parties' stipulation. They assert that joint stipulations, such as the one here, are binding upon parties and courts and that Appellants would have presented testimony and evidence at the *de novo* hearing to refute such arguments had they been raised in the joint stipulation.

B&L counters that Appellants' strained interpretation of the joint stipulation would improperly deny B&L the "full and fair" hearing commanded by this Court in its remand order. (B&L's brief at 5.) It asserts that the purpose of the joint stipulation was to narrow the list of Ordinance provisions with which the Appellants claimed the final plan did not comply. It argues that Appellants' interpretation of the stipulation—that B&L agreed "in advance, to limit its ability to present any legal argument to secure approval of its [p]lan"—is "absurd" and would enlarge the plain meaning of its terms. (B&L's brief at 14.)

In its opinion, the trial court notes that it denied the Appellants' joint motion to strike the issues outside of the joint stipulation, but "then provided the movants the opportunity to address the substance of B&L's argument, which they did by filing Supplemental Joint Proposed Findings of Fact and Conclusions of Law." (Trial court op. at 14.) The court stated that it did not interpret the joint stipulation, which identified the issues raised by Appellants, to preclude legal argument by B&L on issues presented by the facts.

13

We agree. According to the plain language of the stipulation, the parties agreed that the *de novo* hearing would serve as "the full and final evidentiary *to address the issues Appellants have raised*," which it then proceeds to list. (R.R. at 149a) (emphasis added). Notably absent from the stipulation was any discussion regarding B&L's preclusion from raising arguments in support of its final plan. Indeed, the stipulation seems to contemplate as much, stating, "the Parties will address legal arguments in support of their positions by submitting briefs by February 25, 201[6]." (R.R. at 149a.) It appears that B&L complied with the stipulation, and we see no error in the trial court's interpretation.

Next, Appellants argue that the trial court misapplied this Court's decisions in *Honey Brook*, *Highway Materials, Inc.*, and *Raum* by relying on them in its determination that the Borough acted in bad faith.

In *Honey Brook*, a developer purchased property in December 2005, at which point it was zoned as residential. 132 A.3d at 613. In June 2006, the developer submitted a plan for the development of townhouses. *Id.* at 613-14. The township's engineer informed the developer that, because the plan contained five omissions, it was incomplete and would not be forwarded to the township's planning commission for review. *Id.* at 614. Ten days later, the developer submitted an amended plan addressing the five omissions. *Id.* In July 2006, the township adopted an ordinance rezoning most of the developer's property from residential to agricultural. *Id.* Thereafter, the township's manager rejected the developer's amended plan as incomplete and stated it would not be permitted to move forward for review. *Id.* at 614-15. After exchanging correspondence, the township's engineer submitted the plan to the township's planning commission, which voted to recommend that the township's board of supervisors disapprove the plan. The developer attempted to submit

14

additional materials but they were returned without being received or considered by the planning commission or the board of supervisors. Ultimately, the board of supervisors rejected the plan. *Id.* at 615. On appeal to the court of common pleas, the developer argued that the township acted in bad faith in that his preliminary plan was not processed in an objective manner. *Id.* at 616-18. The common pleas court affirmed the board of supervisors, stating that the actions of the township did not rise to the level of bad faith. *Id.* at 618-19.

On appeal, our Court identified *Raum* and *Highway Materials* as the relevant precedent for cases in which a landowner asserts that bad faith tainted a municipality's review of a development plan. In reiterating our holding in *Raum*, we stated that municipalities have "a legal obligation to act in good faith upon any proposed subdivision and land development plan," which includes "discussing matters involving technical requirements or ordinance interpretation with an applicant, and providing an applicant a reasonable opportunity to respond to objections or to modify plans where there has been a misunderstanding or difference of opinion." *Honey Brook*, 132 A.3d at 620 (quoting *Raum*, 370 A.2d at 798). We also noted *Raum*'s holding that an applicant has a "vested right" to develop property "in accordance with the zoning in effect at the time his application is filed." *Id.* (quoting *Raum*, 370 A.2d 798).

The Court went on to discuss *Highway Materials*, in which a landowner seeking to develop its property in an industrial district filed a preliminary plan at a time when the township was considering a zoning change, which would rezone the landowner's property from industrial to residential. *Honey Brook*, 132 A.3d at 620. The township's engineer requested additional information with regard to certain aspects of the plan, and the landowner submitted a revised plan addressing those areas.

15

*Id.* The planning commission rejected the preliminary plan, and the landowner appealed. *Id.* The common pleas court reversed, finding it relevant that the landowner sought input with regard to whether a water basin could be located on the property, to which the township responded that it would not help him on "a controversial development." *Id.* (quoting *Highway Materials*, 974 A.2d at 544). The common pleas court also noted that when the landowner sought direction on the plan's sewer system, the township did not respond. *Honey Brook*, 132 A.3d at 621. Accordingly, the trial court found that the township had not acted in good faith in advising the landowner on remedying the defects in the plan, nor did it afford the landowner the opportunity to cure the deficiencies. *Id.* On appeal, this Court affirmed, observing that the landowner requested the township's input and made requests for an extension, which were denied, thus "denying the landowner the opportunity to correct the plan." *Id.*

Returning to the facts of its case, the *Honey Brook* Court analyzed whether the township exhibited bad faith during the review process. *Id.* Noting that the township had rejected the developer's plan without allowing it to respond, we concluded that its actions constituted bad faith. *Id.* at 621-22.

In the present appeal, Appellants argue that, unlike the above cases where the bad faith occurred during the review phase, here, the trial court found that the Borough acted in bad faith by intervening in the land use appeal in opposition to the Commission's approval of the final plan. Appellants assert that the Borough was simply exercising its statutory right to intervene under section 1004-A of the MPC[8]

---

[8] Section 1004-A states:

> Within the 30 days first following the filing of a land use appeal, if the appeal is from a board or agency of a municipality, the municipality and any owner or tenant of property directly involved in the action appealed from may intervene as of course by filing a notice of

because the Commission committed legal error and abused its discretion in approving B&L's final plan, which violated multiple provisions of the Ordinance. Noting that, in both of its opinions, the trial court agreed and held that the final plan violated Ordinance provisions, Appellants argue that the Borough "cannot be held to have acted in bad faith exercising its statutory right to intervene in a land use appeal to assert arguments that the [trial] court itself held to have merit." (Appellants' brief at 24.)

They maintain that, unlike here, in the aforementioned cases, the municipalities acted in bad faith to avoid granting approval to plans that complied or could easily be amended to comply with the applicable zoning ordinances. Conversely, they argue, in this case, B&L's final plan was fairly reviewed by the Commission and the trial court and that, by the time the Borough got involved, the control of the plan's approval had already passed from the Commission and Borough to the trial court.

Appellants acknowledge that the case "bears superficial similarity" to the bad faith cases in that the TND provisions under which B&L's plan was originally submitted were subsequently repealed. However, Appellants attempt to distinguish them, arguing that, in those cases, the developers' plans were denied and new ordinances were enacted to prevent development altogether. In those cases, Appellants argue, the developers were forced to sue to have their plans reviewed in good faith under the original ordinances. Appellants argue that, unlike those cases, here, B&L cannot claim that it has been deprived fair consideration of its plan under the original ordinance simply because it "faired better" under review by the Commission than the trial court. (Appellants' brief at 25.)

---

intervention, accompanied by proof of service of the same, upon each appellant or each appellant's counsel of record. All other intervention shall be governed by the Pennsylvania Rules of Civil Procedure.

53 P.S. §11004-A, *added by* Act of December 21, 1988, P.L. 1329.

17

Finally, Appellants argue that their land use appeal attempts to vindicate legitimate interests of the owners of neighboring properties. Thus, they argue, even if the Borough had not intervened, the trial court would have reached the same conclusion, to wit, that B&L's final plan did not comply with the Ordinance.

We disagree and concur with the trial court that Appellants' attempts to distinguish the present facts from those of *Honey Brook*, *Raum*, and *Highway Materials, Inc.* are not persuasive. Further, we disagree that the trial court misapplied our holding in *Honey Brook* or the cases discussed therein.

In its opinion, the trial court quoted extensively from *Honey Brook* and was careful in analogizing the facts of the bad faith cases to the facts of the present case. However, the trial court specifically acknowledged that the fact pattern herein differed from those of the bad faith cases "in a critical respect," which was that the reviewing municipal entity, the Commission, had *approved* B&L's development plan. (Trial court op. at 21.) This difference, the court stated, made B&L's vested rights argument "even more compelling" than those presented in the bad faith cases. (Trial court op. at 21.) The court emphasized that the Commission accepted B&L's preliminary land development plan, worked with B&L on revisions, and ultimately granted approval to the final plan. The court questioned how that same Commission could then argue that its own actions were improper and state that B&L was precluded from relief because the provisions under which it approved B&L's plan were rescinded.

This Court agrees. A review of the series of events as stated by the trial court above supports the trial court's finding of bad faith on behalf of the Borough, in line with this Court's prior precedent. Although Appellants attempt to distinguish what is plainly controlling case law in this matter, they have not at any point addressed the trial court's primary concern, which was that the very Commission that granted B&L's

18

approval, changed course and without explanation now seeks to have a court reverse its own prior decision. Accordingly, we find no abuse of discretion by the trial court.

Appellants' final argument contends that the trial court erred in finding that B&L's plan was capable of correction. Specifically, it argues that, because the trial court did not address "the majority of the zoning issues that were supposed to be addressed at the *de novo* hearing," the court's determination that the plan could be corrected was without support. (Appellants' brief at 26.)

This Court has previously held that a zoning hearing board, or in this case, a trial court conducting a *de novo review*,

> must render an opinion delineating sufficient findings to support its conclusion in order to provide for meaningful judicial review. It is also true, however, that specific findings of fact are not required if the [court]'s opinion provides an adequate explanation of its resolution of the factual questions involved, and if it sets forth the [court]'s reasoning in such a way as to demonstrate that its decision was reasoned and not arbitrary.

*Borough of Youngsville v. Zoning Hearing Board of Borough of Youngsville*, 450 A.2d 1086, 1089 (Pa. Cmwlth. 1982) (internal citations omitted).

In the present case, the trial court acknowledged the provisions with which Appellants assert the final plan does not comply. The court stated that a review of the allegations of noncompliance "clearly demonstrate[d] that the final plan [was] capable of correction," since "[e]ach and every deficiency concern[ed] a technical design issue that [could] be addressed and corrected with competent assistance, communication, and cooperation." (Trial court op. at 27.) The court acknowledged Appellants' argument that the final plan did not comply in many more areas than those listed in the

19

opinion, but stated that, given its finding regarding B&L's vested rights, the resolution of the "numerous other disputes [was] unnecessary." (Trial court op. at 13.)

Appellants contest this finding, arguing that many of the alleged violations "deal with significant violations of setback provisions and front yard sizes, which can only be resolved by a major reduction and re-designing of buildings." (Appellants' brief at 37.) However, rather than demonstrating an abuse of discretion, Appellants' argument merely expresses its disagreement with the trial court's opinion with regard to the potentiality of the violations' correction.

We find that the trial court's explanation is adequate in that it demonstrates that its resolution of the issue was reasoned and not arbitrary. We note that the trial court's familiarity with this case began in June 2013, when the land use appeal was filed by Appellants, since which it has conducted three hearings, one of which was *de novo* review, issued numerous orders, and filed two opinions with regard to the final plan and its compliance with the Ordinance. (R.R. at 21a, 78a, 80a, 135a, 151a, 334a, 526a-28a; Trial court's op. at 7.)

Accordingly, the August 6, 2016 order of the trial court is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deborah A. Ames, George C.
Stewart and Joanne C. Stewart,
David Moore and Carl J. Bish and
Borough of Indiana

            v.

The Planning Commission of Indiana
Borough, Indiana County, and
B&L Properties, II, L.P.

Appeal of:  The Planning Commission
of Indiana Borough, Indiana County
and Borough of Indiana

:
:
:
:
:
:   No.  1499 C.D. 2016
:
:
:
:
:
:
:
:
:
:
:
:

Deborah A. Ames, George C.
Stewart and Joanne C. Stewart,
David Moore and Carl J. Bish and
Borough of Indiana

            v.

The Planning Commission of Indiana
Borough, Indiana County, and
B&L Properties, II, L.P.

Appeal of:  Deborah A. Ames, George
C. Stewart and Joanne C. Stewart,
David Moore and Carl J. Bish

:
:
:
:
:
:   No.  1500 C.D. 2016
:
:
:
:
:
:
:
:
:
:
:

## *ORDER*

       AND NOW, this 7th day of December, 2017, the August 4, 2016 order of the Court of Common Pleas of Indiana County is affirmed.

 

                                   _____
                                   PATRICIA A. McCULLOUGH, Judge