# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| 1050 Ashbourne Associates, LLC, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1713 C.D. 2016 |
| | : | Argued: May 1, 2017 |
| Cheltenham Township Board of | : | |
| Commissioners | : | |

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE MICHAEL H. WOJCIK, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                                    FILED: August 1, 2017

1050 Ashbourne Associates, LLC (Developer) appeals an order of the Court of Common Pleas of Montgomery County (trial court) that affirmed the decision of the Cheltenham Township Board of Commissioners to disapprove Developer's plan for an age-restricted development in Cheltenham Township. The trial court rejected the Commissioners' theory that Developer's plan was required to comply with the zoning requirements for the Township's Preservation Overlay District. It held, rather, that Developer's development was governed exclusively by the zoning requirements of the Age-Restricted Overlay District. However, the trial court affirmed the Commissioners' disapproval of Developer's plan because it proposed buildings that exceeded the height requirements for new construction in the Age-Restricted Overlay District. Developer asserts that the trial court erred because the height requirements in question were enacted after it filed its request for a special exception. Developer also contends that the Board of Commissioners acted in bad faith. We affirm in part and reverse in part.

## Background

Developer owns a 7.32-acre parcel in Cheltenham Township, Montgomery County, located in the R-4 Residential Zoning District and the Age-Restricted Overlay District.[1] Developer seeks to construct three apartment buildings, each four stories high, tailored for residents 55 and older. Two of the buildings are proposed to have 24 units each, and the third building is proposed to have 31 units. The Zoning Code authorizes age-restricted housing developments by special exception. On January 14, 2013, after multiple hearings, the Zoning Hearing Board (Zoning Board) granted Developer's request for a special exception. The Township appealed the Zoning Board's decision to the trial court, and on September 15, 2014, it affirmed the Zoning Board.

Thereafter, on December 18, 2014, the Township notified Developer that its project was required to comply with the provisions of the Preservation Overlay District.[2] R.R. 11a. Developer responded that the provisions of the Age-Restricted Overlay District had precedence over any other conflicting Zoning Code provisions, such as those in the Preservation Overlay District.

On June 16, 2015, Developer submitted a sketch plan to the Township, as required by Section 260-35 of the Township's Subdivision and Land

---

[1] "The purpose of this district is to provide accommodation for age-restricted housing developments by establishing regulations to permit development by special exception, tailored to the needs of residents 55 years of age and older … and to require protection and preservation of historic resources in the development of land for age-restricted housing ...." THE CHELTENHAM ZONING ORDINANCE OF 1929 AS AMENDED DECEMBER 15, 1964 (ZONING CODE), §295-240; Reproduced Record at 240a (R.R. ___).

[2] The purpose of the Preservation Overlay District is, in part, to protect historic sites and open space areas, as well as to preserve floodplains, wetlands, streams, valleys, woodlands and other natural and scenic features. ZONING CODE §295-186, *available at* http://ecode360.com/6449532 (last visited June 30, 2017).

Development Ordinance (SALDO) for a development of eight dwelling units or more. CHELTENHAM TOWNSHIP SUBDIVISION CODE OF 1974 (SALDO) §260-35. On July 2, 2015, Robert Habgood, on behalf of the Township, responded to Developer's sketch plan as follows:

> The project has been designed in accordance with the Township of Cheltenham Zoning & Age-Restricted Overlay Ordinances, along with a special exception and variances that were granted by the Zoning Hearing Board under Appeal #3437.
>
> *Your Subdivision and Land Development plans appear[] to be complete and in order at this time. However, this does not waive the Township's right to require additional relief through Zoning Variances* as part of any additional review and comments for this application.

R.R. 67a (emphasis added). Habgood's letter further advised that the Township had forwarded Developer's sketch plan to the Township Engineer, the Township Shade Tree Commission, the Township Planning Commission, the Township Public Works Committee, and the Township's Board of Commissioners.

The Board of Commissioners held several hearings on Developer's sketch plan that were attended by Developer. When the Commissioners requested Developer to give them additional time to review the plan, Developer denied the request. At a public hearing on September 16, 2015, the Commissioners voted to disapprove Developer's sketch plan. On September 22, 2015, the Commissioners issued a written resolution to explain their disapproval. First, each proposed building would contain more than eight dwelling units in excess of the eight-unit maximum for buildings in the Preservation Overlay District.[3] Second, each

---

[3] Section 295-189.E of the Township's Zoning Code states:
**(Footnote continued on the next page . . .)**

proposed building would be four stories and 47 feet high, which exceeded the maximum height allowed in the Age-Restricted Overlay District under the 2012 amendments to the Zoning Code.[4]

Developer appealed to the trial court, and it affirmed the Board of Commissioners' decision. In its opinion, the trial court rejected the Commissioners' holding that Developer had to comply with the requirements of the Preservation Overlay District. However, the trial court held that the sketch plan did have to comply with the 2012 height restrictions for buildings in the Age-Restricted Overlay District, even though those restrictions were enacted after Developer submitted its special exception application to the Zoning Board.[5] The trial court explained that Developer was not exempt from the 2012 amendments because it did not file its sketch plan within six months of receiving its special exception. On this basis, the trial court upheld the Board of Commissioners'

---

**(continued . . .)**

> E. Building length or depth. The greatest dimension in length or depth of a new structure shall not exceed 160 feet. No more than eight units shall be allowed in a new structure. Existing buildings shall be considered nonconforming.

ZONING CODE §295-189.E, *available at* http://ecode360.com/6449532 (last visited June 30, 2017).

[4] Section 295-243.F.(1) of the Zoning Code states:

> F. Maximum building height.
>
> > (1) Except as provided in Subsection F(2), the maximum building height shall be 45 feet, not to exceed three stories. Notwithstanding any other terms in this article, Subsection F(2) shall not apply to tracts of 10 acres or less.

ZONING CODE §295-243.F.(1); R.R. 244a.

[5] When Developer submitted its special exception, eight-story buildings up to 96 feet were permitted in the Age-Restricted Overlay District.

4

disapproval of Developer's sketch plan.  Finally, the trial court concluded that the Commissioners did not act in bad faith by disapproving the sketch plan.

On appeal,[6] Developer argues that the trial court erred in holding that the 2012 amendments to the Age-Restricted Overlay District requirements apply to its project.  Developer argues that its rights under the special exception granted by the Zoning Board had vested and could not be nullified in the land development review process.  Developer argues that the Board of Commissioners acted in bad faith in its review of the sketch plan and, further, that the trial court abused its discretion by not remanding this matter to the Commissioners to allow for the filing of an amended sketch plan.

## Preservation Overlay District[7]

The Preservation Overlay District limits the number of dwelling units per building to eight, unlike the Age-Restricted Overlay District, which does not impose any such limit.  Developer contends that this conflict makes the Age-Restricted Overlay District the only law applicable to its project.  The Commissioners contend that the Age-Restricted Overlay District's silence on the number of units allowed in a single building does not create a conflict; rather, it

---

[6] In a land use appeal, where the trial court does not take any additional evidence, our scope of review is limited to determining whether the governing body has committed an error of law or an abuse of discretion.  *Ruf v. Buckingham Township,* 765 A.2d 1166, 1168 n.2 (Pa. Cmwlth. 2001).  Where an appeal presents issues of law, including issues of statutory interpretation, this Court's scope of review is plenary and our standard of review is *de novo*.  *Kassouf v. Township of Scott*, 883 A.2d 463, 469 (Pa. 2005).

[7] The Commissioners did not cross-appeal the trial court's holding that the Preservation Overlay District requirements are not applicable to Developer's project.  Both parties have briefed the issue; the Commissioners contend that the trial court erred.  If the Commissioners' argument were accepted by this Court, this would provide an alternative ground to affirm the trial court.  Lest there be any doubt, the Court will address this issue.

left a vacuum, which has been filled by the Preservation Overlay District standards. Further, the Commissioners argue that Developer should have sought a variance or a clarification from the Township Zoning Officer before filing its sketch plan.[8]

The provisions of the Age-Restricted Overlay District are paramount to other provisions of the Zoning Ordinance. Section 295-241.D of the Zoning Code states, in relevant part, as follows:

> All development under the Age-Restricted Overlay District shall comply with the provisions of this article[, Article XXXIII: Age-Restricted Overlay District]. If a conflict exists between the requirements of this article and *another provision of the Cheltenham Township Zoning Ordinance*, the requirements of this article shall apply.

ZONING CODE §295-241.D; R.R. 240a (emphasis added). The Preservation Overlay District limits the number of units per building. Although the Age-Restricted Overlay District imposes a number of limits on buildings, it does not impose one on the number of units per building. The trial court held that this constituted a conflict and, consequently, the provisions of the Age-Restricted Overlay District prevailed. The trial court dismissed the Township's contention that Developer had to comply with the Preservation Overlay District as "specious, at best." Trial Court Op., 12/5/2016, at 4.

---

[8] The Township's SALDO states, in relevant part:

> Any subdivision or land development plan must meet the requirements of Chapter 295, Zoning, unless variances or special exceptions have been granted by the Zoning Hearing Board.

SALDO §260-31; R.R. 277a. Article XXIV of the Zoning Code sets forth the Preservation Overlay District requirements.

We agree with the trial court's logic. Had the Township chosen to set, for example, a ten-unit maximum for a new building in the Age-Restricted Overlay District, it would be obvious that the ten-unit maximum governed. That the Township placed no limit on the number of units allowed in a single building in the Age-Restricted Overlay District means only that the conflict is greater. Stated otherwise, the so-called "silence" in the Zoning Code actually authorized as many units in a single building in the Age-Restricted Overlay District as are structurally feasible and tailored to the needs of residents over 55 years of age. Under Section 295-241.D of the Zoning Code, this authorization prevails over the conflicting provision for the Preservation Overlay District. The Board of Commissioners erred in otherwise holding.

**Age-Restricted Overlay District**

The 2012 amendments to the Township's Age-Restricted Overlay District revised the height requirement for new buildings. Developer argues that these requirements did not apply to its project because it submitted its special exception application to the Zoning Board before the amendments were enacted. The Commissioners respond that that Developer failed to preserve this issue by not raising it below. In any case, the Commissioners agree with the trial court's conclusion that Developer was required to file its sketch plan within six months of the trial court's affirmance of the Zoning Board's grant of a special exception in order to be exempt from the 2012 Zoning Code amendments. Developer did not comply with this timeline.

We begin with the Commissioners' waiver argument. Developer's appeal to the trial court stated that the Zoning Board's grant of a special exception exempted its project from the 2012 height amendments to the Age-Restricted

7

Overlay District. Supplemental Reproduced Record at 4b, 7b (S.R.R. __). Likewise, Developer argued in its trial court brief that the Municipalities Planning Code (MPC)[9] made the 2012 amendments to the Zoning Code inapplicable to its sketch plan. S.R.R. 29b. On appeal to this Court, Developer bolsters this argument with citation to the Township's Zoning Code. On appeal, a party may identify additional legal authority to support the claims it raised before a lower court. *See Allegheny County v. Commonwealth*, 490 A.2d 402, 413 n.9 (Pa. 1985) (holding that where a party has "merely identified additional legal authority in support of its claims," the claim, or issue, is not waived). We reject the Township's waiver argument.

      Turning to the merits of Developer's appeal, we begin with a review of the relevant law. Section 917 of the MPC,[10] 53 P.S. §10917, insulates a

---

[9] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202.

[10] Section 917 was added by the Act of June 23, 2000, P.L. 495, *as amended,* 53 P.S. §10917. It states as follows:

> *When an application for either a special exception or a conditional use has been filed with either the zoning hearing board or governing body*, as relevant, and the subject matter of such application would ultimately constitute either a land development as defined in section 107[, 53 P.S. §10107,] or a subdivision as defined in section 107, *no change or amendment of the zoning, subdivision or other governing ordinance or plans shall affect the decision on such application* adversely to the applicant, and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed. Provided, further, should *such an application be approved* by either the zoning hearing board or governing body, as relevant, *applicant shall be entitled to proceed with the submission of either land development or subdivision plans within a period of six months or longer as may be approved by either the zoning hearing board or the governing body following the date of such approval in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed before either the zoning hearing board or governing body, as relevant.* If either a land development or subdivision plan is so filed within said period, such plan shall be

**(Footnote continued on the next page . . .)**

landowner from having to comply with zoning ordinance amendments enacted after the landowner has submitted a special exception application. Upon the grant of a special exception, the applicant may then proceed with a subdivision or development plan under the terms of the "governing" ordinance that existed when the applicant submitted its special exception application to the zoning hearing board. *Id.* The applicant is "entitled" to file its subdivision or development plan "*within a period of six months or longer* as may be approved" by the governing authority "in accordance with the provisions of the governing ordinances." *Id.* (emphasis added).

Here, Developer applied for a special exception for its age-restricted apartment building project on May 30, 2012. In July of 2012, the Township amended the height requirements for buildings in the Age-Restricted Overlay District. Notwithstanding these amendments, the Zoning Board granted Developer a special exception on January 14, 2013, and its decision was affirmed by the trial court on September 15, 2014. Developer filed its sketch plan nine months later, on June 16, 2015. The trial court held that under Section 917 of the MPC, Developer filed its sketch plan three months too late and, thus, lost its exemption from the 2012 height requirements. In short, the trial court nullified Developer's special exception.

Under Section 917 of the MPC a landowner is not "entitled" to file a development plan until it receives any necessary special exceptions. Section 917

---

**(continued . . .)**

subject to the provisions of section 508(1) through (4)[, 53 P.S. §10508,] and specifically to the time limitations of section 508(4) which shall commence as of the date of filing such land development or subdivision plan.

53 P.S. §10917 (emphasis added).

9

states that the landowner is entitled to file a plan "within a period of six months or longer" of the approval of the special exception as may be provided in the "governing ordinances." 53 P.S. §10917. Here, the Township's Zoning Code provides that a special exception expires if the applicant does not obtain a building permit within two years. Section 295-211 states:

> *Unless otherwise specified by the Board, a special exception,* variance or reasonable accommodation *shall expire* if the applicant fails either to obtain a building permit or commence the use specified in the Zoning Hearing Board's decision of the appeal *within two years* from the date of authorization thereof[.]

ZONING CODE §295-211; R.R. 210a (emphasis added).

Developer contends that Section 295-211 of the Zoning Code provides the "longer period" referenced in Section 917 of the MPC. Section 295-211 established that a special exception cannot expire for two years "unless otherwise specified by the Board." ZONING CODE §295-211; R.R. 210a. Because the Zoning Board did not "otherwise" specify, Developer had two years after receipt of its special exception, or, here, two years after the trial court affirmed the grant of the special exception, to finalize its approved project. During that period, the Board of Commissioners was required to review its sketch plan under the Zoning Code in effect at the time the application for the special exception was filed. 53 P.S. §10917. The Commissioners respond that Section 917 of the MPC is controlling and cannot be trumped by Section 295-211 of the Zoning Code.

The Commissioners read Section 917 of the MPC as establishing an adamantine statute of limitations for submitting a development plan after receipt of a special exception. Section 917 is far more flexible. Section 917 states that the landowner granted a special exception "*shall be entitled* to proceed with the

10

submission of either land development or subdivision plans within a *period of six months or longer* as may be approved by either the zoning hearing board *or the governing body*...." 53 P.S. §10917 (emphasis added). In short, the grant of a special exception triggers the right to file a development plan, and a municipality must give the landowner at least six months to file its plan. Section 917 expresses an entitlement and not a bright line statute of limitations. More to the point, Section 917 of the MPC also authorizes the municipality to establish a "longer" period than six months "in accordance with the provisions of the governing ordinance[]." *Id.* Here, the Township did establish a "longer" period by enacting Section 295-211 of the Zoning Code, which gives a landowner two years from the date the special exception was granted to implement its special exception, including the completion of the planning requirements. Section 295-211 of the Zoning Code is not "trumped" by Section 917 of the MPC; rather, Section 295-211 implements the authorization provided in Section 917 of the MPC.

Here, the Commissioners denied Developer's sketch plan solely because it did not comply with the 2012 amendments to the Zoning Code setting the new height restrictions on buildings in the Age-Restricted Overlay District.[11] The Commissioners erred. The 2012 amendments were not applicable to Developer's sketch plan because they were enacted after Developer applied for its special exception, which the Zoning Board granted on January 14, 2013, and which was affirmed by the trial court on September 15, 2014. Under Section 295-211 of the Zoning Code, Developer was exempt from the 2012 amendments for two years,

---

[11] It bears noting that the Township referred Developer's sketch plan to a number of parties, such as the Township's Shade Tree Commission and the Township Engineer. Apparently, these referrals yielded no problems from a planning perspective. Indeed, the Township's first reaction to Developer's sketch plan was that it was "complete and in order." R.R. 67a.

11

and it filed its sketch plan within that timeline. The Board of Commissioners nullified Developer's special exception by disapproving the sketch plan before the passage of two years, in violation of Section 295-211 of the Zoning Code. We conclude that the Commissioners erred in doing so, and the trial court erred in affirming that aspect of the Commissioners' decision.[12]

## Bad Faith

Developer contends that the Board of Commissioners acted in bad faith because its stated reasons for disapproving the sketch plan had not been raised during the proceedings on Developer's request for a special exception. Likewise, the Township did not raise the issue of the height of Developer's proposed buildings in any of its discussions with Developer on the sketch plan. As a result, Developer never had an opportunity to address the height of its proposed buildings before its sketch plan was disapproved.

The Commissioners respond that "the entire design of the Development was predicated on exceeding the number of dwelling units permitted in each of the buildings under the Preservation Overlay District (8) and exceeding the height requirement." Commissioners' Brief at 34. They further note that there

---

[12] Developer asserts that the trial court should have ordered a remand to allow Developer to amend its sketch plan to adjust the height of its proposed building. *See* Section 1006-A of the MPC, added by the Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. §11006-A ("In a land use appeal, the court shall have the power to … set aside or modify any action, decision, or order of the governing body…."); *see also Raum v. Board of Supervisors of Tredyffrin Township,* 370 A.2d 777, 798 (Pa. Cmwlth. 1976) (Court recognized that a municipality's duty of good faith includes "providing an applicant a reasonable opportunity to respond to objections or to modify plans where there has been a misunderstanding or difference of opinion."). We need not address Developer's contention because we conclude that the 2012 amendments did not apply to Developer's sketch plan.

would have been time for discussions with Developer, but Developer denied the Commissioners' request for additional time.

We begin with a review of the law on a municipality's obligation to exercise its review authority in good faith. The relevant cases are *Raum*, 370 A.2d 777; *Highway Materials, Inc. v. Board of Supervisors of Whitemarsh Township*, 974 A.2d 539 (Pa. Cmwlth. 2009); and *Honey Brook Estates, LLC v. Board of Supervisors of Honey Brook Township*, 132 A.3d 611, 621 (Pa. Cmwlth. 2016). We consider these cases *seriatim.*

In *Raum*, 370 A.2d 777, the landowner filed a subdivision plan that was followed by 78 days of silence from the township. Two days before the township was scheduled to act on a proposed rezoning of the landowner's property, the planning commission disapproved the subdivision plan for the stated reasons that it contained "more information than required" and because three of the 19 lots were bisected by roads. *Id.* at 802. The landowner filed a modified plan within the two remaining days, but the township refused to consider the modification. This Court explained that a municipality reviewing a land development plan is bound by a duty that

> includes discussing matters involving technical requirements or ordinance interpretation with an applicant, and providing an applicant a reasonable opportunity to respond to objections or to modify plans where there has been a misunderstanding or difference of opinion.

*Id*. at 798. By waiting until the last possible moment to raise objections and then claiming there was insufficient time to consider the modified plan, the township acted in bad faith. Accordingly, this Court ordered the plan to be approved.

In *Highway Materials*, 974 A.2d 539, the landowner sought to develop its property in an industrial district and to that end filed a preliminary plan. At the time, the township was considering a zoning ordinance amendment to rezone the landowner's property from industrial to residential. The township engineer requested more information on the sewer design, and the landowner responded with a revised preliminary plan that included two sewer proposals. The planning commission rejected the preliminary plan, and the trial court reversed. When the landowner asked the township for input, the township responded that it was not going to help the developer "on a controversial development." *Id*. at 544. Then, when the landowner sought direction on the sewer system, the township did not respond. On these facts, the trial court held that the township "did not proceed in good faith." *Id.* at 545. This Court affirmed the trial court.

Most recently, in *Honey Brook Estates,* 132 A.3d 611, the township rejected the developer's preliminary plan as incomplete, without giving the developer the opportunity to confer with the township. After an appeal, the trial court concluded that the developer did not prove bad faith. This Court reversed, explaining that the duty of good faith includes

> *discussing matters involving technical requirements or ordinance interpretation with an applicant, and providing an applicant a reasonable opportunity to respond* to objections or to modify plans where there has been a misunderstanding or difference of opinion.

*Id*. at 620 (citing *Raum*, 370 A.2d at 798) (emphasis added). Instead, the township declined to confer with the developer on its plan as had been its long standing practice; the township advised the developer that its plan would not be sent to the planning commission but then did so without informing the developer; and, in the

14

meantime, the township gave additional materials to the planning commission to ensure a denial of the amended preliminary plan. The township's conduct was held to constitute bad faith.

Here, the evidence shows that the Township's representatives and Developer conferred on the plan for several months, albeit about the Preservation Overlay District requirements. When Developer submitted its sketch plan, it was forwarded to various Township committees for review. When Developer denied Commissioners' request for additional time to review the plan, they had to act to avoid a deemed approval of the sketch plan.

The facts of this case do not approach those of *Raum*, *Highway Materials* or *Honey Brook*. We agree with the trial court that Developer did not demonstrate bad faith.

### Conclusion

In sum, we affirm the trial court's holding that the Preservation Overlay District requirements did not apply to Developer's sketch plan and that the Board of Commissioners did not act in bad faith. We reverse the trial court's holding that Developer's sketch plan was required to comply with the height requirements established in the 2012 amendments to the Zoning Code for new buildings in the Age-Restricted Overlay District. We remand this matter to the trial court for further remand to the Board of Commissioners to consider Developer's sketch plan under the Age-Restricted District Overlay provisions in effect at the time Developer applied for the special exception.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

1050 Ashbourne Associates, LLC, :
     Appellant :
         :
    v.    : No. 1713 C.D. 2016
         :
Cheltenham Township Board of :
Commissioners    :

# **O R D E R**

AND NOW, this 1st day of August, 2017, the order of the Court of Common Pleas of Montgomery County dated September 22, 2016, in the above-captioned matter is AFFIRMED in part and REVERSED in part, and the matter is REMANDED to the trial court for further remand to the Cheltenham Township Board of Commissioners for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

       _____
       MARY HANNAH LEAVITT, President Judge