# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mary Bolinger,                                      :
        Appellant                            :
                                       :
        v.                                        :    No. 1217 C.D. 2020
                                        :    Argued: September 20, 2021
Board of Commissioners of                          :
Manheim Township, Manheim                          :
Township, RV Holdings, LP and                      :
Hurst Family Estate, LP                            :

**BEFORE:  HONORABLE P. KEVIN BROBSON, President Judge**
                 **HONORABLE CHRISTINE FIZZANO CANNON, Judge (P.)**
                 **HONORABLE J. ANDREW CROMPTON, Judge**

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY PRESIDENT JUDGE BROBSON**         **FILED: December 13, 2021**

Appellant Mary Bolinger (Appellant) appeals from an order of the Court of Common Pleas of Lancaster County (Common Pleas), dated October 27, 2020. Common Pleas affirmed the decision of the Board of Commissioners of Manheim Township (Board), thereby denying Appellant's appeal of the approval of RV Holdings, LP's (RV Holdings) and Hurst Family Estate, LP's (Hurst Family Estate) (collectively, Developers) application for a conditional use (Application). For the reasons discussed below, we reverse Common Pleas' order and remand the matter to Common Pleas with instructions to vacate the Board's decision and remand the matter to the Board for the issuance of a new decision.

## I. BACKGROUND

Hurst Family Estate is the owner of certain real property located on the west side of Oregon Pike in Manheim Township (Township), Lancaster County, Pennsylvania (Site A). Site A, which is comprised of approximately 48.5 acres, is

the location of the Oregon Dairy market, restaurant, barn, and corn maze, as well as a residence. RV Holdings is the owner of certain real property located in the Township on the east side of Oregon Pike and on the west side of Pennsylvania State Route 222 (Site B). Site B, which is comprised of approximately 26.74 acres, is the location of the former Shawnee Motor Lodge. Both Site A and Site B (collectively, Property) are located in the Township's T-5 Oregon Village Overlay Area. Section 2406 of the Township's Zoning Ordinance (Ordinance) permits a master site planned development—*i.e.*, a mixture of medium and higher density residential development, various office, commercial uses, and hospitality services—in the T-5 Oregon Village Overlay Area as a conditional use. On September 10, 2018, Developers filed their Application with the Township, seeking conditional use approval for a master site planned development at the Property (Project).[1]

The Board conducted public hearings on the Application on various dates between January 14, 2019, and May 28, 2019. In support of their Application, Developers offered the testimony of: (1) Joel Young, RLA, who was admitted by the Board as an expert in land planning and landscape architecture; (2) John M. Schick, EIT, who was admitted by the Board as an expert in transportation planning and design; (3) Victor Hurst, principal of RV Holdings and Hurst Family Estate; and (4) William F. MacAvoy, R.A., who was admitted by the Board as an expert in architecture and building design. In opposition to Developers' Application, Martin L. Wenrich, James L. Garland, and Lester M. Oberholtzer (Protestants)—three of the individuals who were granted party status by the Board and represented by counsel—offered their own testimony. Protestants also offered the testimony

[1] The Township's Planning Commission initially reviewed Developers' Application at its public meetings on November 28, 2018, and December 18, 2018, and thereafter recommended approval of the Application.

2

of: (1) David High, who was admitted by the Board as an expert in architecture; (2) Randolph J. Harris, who was admitted by the Board as an expert in historic resources and structures in and around the Village of Oregon; (3) Donald B. Kraybill, who was admitted by the Board as an expert in Amish and Old Order Mennonite culture, community, and religion; and (4) Glenn Mohler, manager of the Lancaster County Geographic Information System. At the conclusion of Protestants' presentation, other individuals who had been granted party status by the Board either noted their objections to or support of the Project. One of those individuals was Appellant, who owns and operates a bed and breakfast in the Township at the corner of East Oregon Road and Creek Road. Relevant here is the testimony of Mr. Harris (Protestants' expert in historic resources and structures in and around the Village of Oregon), Mr. Schick (Developers' expert in transportation planning and design), and Appellant.

Mr. Schick testified that he prepared the traffic study and transportation improvement concept plan for the Project that was submitted with Developers' Application. (Reproduced Record (R.R.) at 454a-57a.) Mr. Schick explained the process and methodology that he employed to study and evaluate the fifteen intersections located in and around the Project and to propose thereafter certain improvements to meet the Pennsylvania Department of Transportation's (PennDOT) established criteria to mitigate the impact of the Project. (*Id.* at 458a-69a, 527a.) Mr. Schick explained that six of those fifteen intersections are currently failing and PennDot's criteria requires Developers to ensure that every one of those intersections has "an acceptable level of service of C or better" and, "[i]f there was any drop in level of service greater than ten seconds of delay, [Developers] had to mitigate those." (*Id.* at 464a-69a.) Ultimately, Mr. Schick opined that, "[b]ased on

3

the improvements proposed . . . [and] the methodology and studies conducted, . . . the improvements will handle the traffic generated by the [Project], as well as background traffic"—*i.e.*, the Project will not "have a substantial adverse effect on congestion of streets and highways [or] traffic levels of service." (*Id.* at 531a.) He further opined that the proposed improvements will actually have a positive impact on safety and level of service at existing intersections that are currently failing, including a reduction of traffic along East Oregon Road and Creek Road. (*Id.* at 502a-05a; Notes of Testimony (N.T.), February 25, 2019, at 363, 376-78.)

Mr. Harris testified that, generally speaking, there are two factors that determine whether a particular property is a historic structure: (1) the age, style, design, and historic integrity of the property; and (2) who lived at the property and what events may have occurred at the property. (R.R. at 761a.) Based upon the collection of buildings, the buildings' histories, style, and design, and the people associated with the buildings, Mr. Harris believes that the Village of Oregon is eligible to be considered a "national historic district." (*Id.* at 773a-74a.) Mr. Harris identified a grist mill complex located on Oregon Road in the Village of Oregon as being listed in the National Register of Historic Places. (*Id.* at 777a-78a.) Mr. Harris also identified thirty-five additional properties located along Oregon Road and Creek Road in the Village of Oregon—including Appellant's bed and breakfast—that the Historic Preservation Trust has identified in the Manheim Township Historic Sites Inventory because those properties "possibly could hold historic significance due to their age, style[,] and design." (*Id.* at 778a-87a.) Mr. Harris admitted, however, that the Historic Preservation Trust did not "look into [the properties'] association with people or events"; he explained that, with the exception of the grist mill complex and a "handful of [other] properties," "we don't know too much about everybody

4

who lived and worked and owned [those] propert[ies] through the years." (*Id.* at 778a, 785a.) Mr. Harris believed that "the historic structures would suffer some vibration from the excavation and construction downstream [during the] course of the construction, as well as the increase in traffic that probably would be attendant to the [Project]." (*Id.* at 789a.) He explained that "[v]ibration is a serious problem with historic properties. Mortar gets dry. Mortar gets powderized. And it can have a destructive effect on the physical characteristics of a historic property." (*Id.*) Mr. Harris, nevertheless, admitted that he did not personally evaluate any of the historical structures but, instead, relied upon the Historic Preservation Trust's materials—*i.e.*, the Manheim Township Historic Sites Inventory. (*Id.* at 791a.) Mr. Harris also admitted that he did not perform any evaluation to determine whether the construction of the underground parking for the Project would have any effect on the nearby historic structures. (*Id.* at 793a-94a.)

Appellant testified that she owns a three-story brick Victorian home in the Village of Oregon, which she has operated as a bed and breakfast for the past year. (*Id.* at 928a-29a.) Appellant explained that at least half of her guests have come to her because they saw the sign for her business located on her property. (*Id.* at 929a-30a.) Although she could not forecast to what extent, Appellant believed that the diversion of traffic from Creek Road and East Oregon Road would have an impact on the visibility of her business. (*Id.* at 930a.) Appellant further believed that her property, which was built in the 1860s with a fieldstone and mortar foundation and a brick-and-mortar exterior with no stud walls or anything to tie it together, would qualify as a historic resource due to its architecture and age and that it could potentially be affected by the vibrations from dynamite blasting that may occur in connection with the Project. (*Id.* at 931a-32a.)

5

On June 24, 2019, the Board granted approval of Developers' Application, subject to certain enumerated conditions. Thereafter, on July 8, 2019, the Board issued a rather detailed decision, wherein the Board made the following relevant findings of fact:

> 50. Section 2406.13 of the . . . Ordinance sets forth the information required for submission of a master site planned development. [Developers] established that they met the submission requirements for a master site planned development in the T-5 [Oregon Village] Overlay Area as set forth in Section 2406.13 of the . . . Ordinance with the expert testimony of Mr. Young and the applicable exhibits as follows:
>
> . . . .
>
> > (e) *All existing land uses and lot lines within two hundred . . . feet of the proposed development, including the location of all public and private streets, drives or lanes, railroads, historic sites and other significant natural or man-made features.* Mr. Young testified that this information is identified on Sheet 2 of Exhibit A-12. Sheet 2 of Exhibit A-12 includes identification of adjoining landowners, lot lines, structures, streets, trees, slopes, and streams within [two hundred] feet of the proposed development.
> >
> > (Protestants' witness, Mr. Harris, stated that [Developers'] conditional use plans did not identify those structures that he identified as historic resources located within [two hundred] feet of the proposed development. Section 2406.13[(]E[)], which identifies those items to be identified on the plan[,] uses the term "historic sites" which is not a defined term in the . . . Ordinance. "Historic resources" and "Historic buildings" are defined terms in the . . . Ordinance and these defined terms are not used in this section of the . . . Ordinance).
>
> . . . .
>
> 51. Through the expert testimony of Mr. Young, Mr. Schick and Mr. MacAvoy, . . . the testimony of Mr. Hurst, and appropriate exhibits[, Developers] demonstrated that the proposed master site planned development meets the purpose and intent of Section 2406 [of

6

the Ordinance, relating to the] T-5 Oregon Village Overlay Area[,] as follows:

(a) *Purpose: to permit as an option in specific circumstances and by conditional use a coordinated master site planned development process which permits a mixture of medium and higher density residential development via providing a variety of dwelling types and a mixture of various office, commercial uses and hospitality services by capitalizing on the transportation opportunities and public utilities while protecting the surrounding agricultural uses and historic character of the Village of Oregon. The intent of the Board . . . in enacting the Oregon Village Overlay Area is:*

. . . .

(10) *To protect and preserve historical structures.* With the amendment of the conditional use plan, the existing barn, which is the only historical resource within the master site planned development, and the farmhouse on Site A are being retained. The reduction in traffic on East Oregon Road and Creek Road will also protect historical resources located in close proximity to these roads.

. . . .

104. [Protestants] presented the expert testimony of Mr. Harris regarding historic resources and structures. [Mr. Harris] reviewed Exhibit P-6 and reviewed some of the history of the Village of Oregon and historic buildings within the Village of Oregon. Mr. Harris noted his concern of the effect of vibration from project construction, vibration from an increase in traffic, and the effect on the Village of Oregon of development occurring next to the existing Village of Oregon.

(a) Mr. Harris did not perform an evaluation of the buildings or site to determine if construction would adversely affect the existing structures in the Village of Oregon.

(b) The majority of the historic structures reviewed by Mr. Harris are located on East Oregon Road and Creek Road. Mr. Schick's testimony and

7

Transportation Impact Study identified a significant decrease of traffic on Creek Road and that portion of East Oregon Road east of the relocated East Oregon Road which would likely result in a reduction in vibration.

(c)    Mr. Harris acknowledged that the plans for the [P]roject do not include any changes to the historic structures in the Village of Oregon.

105.  Mr. Harris provided no testimony that the proposed [P]roject will generate adverse impacts to the historic structures in the Village of Oregon or on the character of the community not normally generated by this type of development which is specifically provided for in the T-5 [Oregon Village] Overlay Area of the . . . Ordinance.

. . . .

117.  [Appellant], a party to the proceeding, noted her concerns about the effect of the development on [the] Township generally and on her bed and breakfast establishment at the corner of East Oregon Road and Creek Road.  She speculated that reduced traffic on East Oregon Road may reduce the visibility of her business and affect her business.  Finally, she noted concerns that blasting for the [P]roject site may affect her building.  [Appellant's] property is not adjacent to and does not abut the [P]roject.

(Board's Decision at 10-11, 13-15, 29-30, 32 (citations omitted).)   Appellant appealed the Board's decision to Common Pleas.  By opinion and order dated October 27, 2020, Common Pleas affirmed the Board's decision.  Appellant then appealed to this Court.

## II.  ARGUMENTS ON APPEAL

On appeal,[2] Appellant argues that the Board abused its discretion and/or committed an error of law by granting Developers' Application

---

[2] "In a land use appeal, where the trial court does not take any additional evidence, our scope of review is limited to determining whether the governing body has committed an error of law or an abuse of discretion." *1050 Ashbourne Assocs., LLC v. Cheltenham Twp. Bd. of Comm'rs*, 167 A.3d 828, 831 n.6 (Pa. Cmwlth. 2017).  A "governing body abuses its discretion when its findings are not supported by substantial evidence, *i.e.*, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *LTS Dev., Inc. v. Middle Smithfield Twp.*

8

because: (1) Developers failed to include Appellant's bed and breakfast, which is located within two hundred feet of the Project, as a historic site on their master site plan for the Project; (2) Developers failed to demonstrate how the Project complied with the intent of the T-5 Oregon Village Overlay Area to protect and preserve historical structures, including Appellant's bed and breakfast; and (3) the Board violated its duty as trustee under the Environmental Rights Amendment (ERA) set forth in Article I, Section 27 of the Pennsylvania Constitution[3] to protect and preserve historic resources.[4]

### III. DISCUSSION

### A. Conditional Uses Generally

"A conditional use is nothing more than a special exception which falls within the jurisdiction of the municipal governing body rather than the zoning hearing board." *In re Thompson*, 896 A.2d 659, 670 (Pa. Cmwlth. 2006), *appeal denied*, 916 A.2d 636 (Pa. 2007). Just like special exceptions, a conditional use is not an exception to a municipality's zoning ordinance, "but rather a use to which [an] applicant is entitled provided the specific standards enumerated in the ordinance for the [conditional use] are met by the applicant." *Id.* In recognition of the similarity between special exceptions and conditional uses, courts apply the same burden of

---

*Bd. of Supervisors*, 862 A.2d 686, 688 n.1 (Pa. Cmwlth. 2004), *appeal denied*, 877 A.2d 463 (Pa. 2005).

[3] The Environmental Rights Amendment provides:

The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic, and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

Pa. Const. art. I, § 27.

[4] We have reordered Appellant's arguments for the purpose of discussion.

9

proof standards to both types of applications. *Id.* The applicable standard of proof requires an applicant to demonstrate that the use proposed in an application complies with the specific criteria of the particular ordinance. *Id.* An applicant that satisfies this prima facie burden is entitled to approval, unless the objectors in the proceeding offer credible and sufficient evidence indicating that the proposed use would have a detrimental impact on public health, safety, and welfare. *Id.* This Court has previously delineated the parties' respective burdens in an application for conditional use as follows:

> *Specific requirements*, *e.g.*, categorical definition of the [conditional use] as a use type or other matter, and objective standards governing such matter as a [conditional use] and generally:
>
>> The applicant has both the duty and the burden.
>
> *General detrimental effect*, *e.g.*, to the health, safety and welfare of the neighborhood:
>
>> Objectors have both the duty and the burden[;] the ordinance terms can place the burden on the applicant but cannot shift the duty . . . .
>
> *General policy concern*, *e.g.*, as to harmony with the spirit, intent or purpose of the ordinance:
>
>> Objectors have both the duty and the burden; the ordinance terms cannot place the burden on the applicant or shift the duty to the applicant . . . .

*White Advert. Metro, Inc. v. Zoning Hearing Bd. of Susquehanna Twp.*, 453 A.2d 29, 32-33 (Pa. Cmwlth. 1982) (quoting *Bray v. Zoning Bd. of Adjustment*, 410 A.2d 909, 913 (Pa. Cmwlth. 1980)). In other words, the applicant bears the burden of proving compliance with the specific criteria of an ordinance, whereas the objector bears the burden of proving a failure to comply with the general criteria of an ordinance. While conformity/harmony with the intent and purpose of an ordinance is typically a general criteria and the burden is on the objector to prove noncompliance

10

therewith, an ordinance, by its terms, can specifically require that an applicant demonstrate that the conditional use is in conformance with the purpose and intent of the ordinance. *See Gouwens v. Indiana Twp. Bd. of Supervisors*, ___ A.3d ___, ___ (Pa. Cmwlth., No. 1377 C.D. 2018, filed June 25, 2019), slip op. at 10 ("The [z]oning [o]rdinance here provides that the [b]oard may approve a [planned residential development] 'if, and only if, [it] accomplish[es] the foregoing purposes' and, therefore, renders the specified purposes requirements." (some alterations in original)).

## B. Relevant Provisions of the Ordinance

Section 2406.3 of the Ordinance provides two options for development within the T-5 Oregon Village Overlay District: (1) "uses and developments permitted in the underlying zoning district;" and (2) a master site planned development by conditional use. An applicant seeking approval of a master site planned development by conditional use must meet both the requirements for conditional uses set forth in Section 2810.3(B) of the Ordinance[5] and the requirements for

---

[5] Section 2810.3(B) of the Ordinance provides:

> [An] applicant [for conditional use] shall have the burden of proving compliance with the following:
>
> (1) The suitability of the property for the use desired.
>
> (2) That the proposed use will not have a substantial adverse effect upon congestion of streets and highways or upon traffic levels of service or any hazards arising therefrom. The Board may require the applicant to submit a traffic study prepared by a qualified traffic engineer to satisfy this requirement.
>
> (3) That the proposed use will not have a substantial adverse effect on the availability of parking in the immediate area.
>
> (4) That the proposed use will not have a substantial adverse effect on existing or proposed public water, public sewer, public

11

development and redevelopment within the T-5 Oregon Village Overlay Area set forth in Section 2406 of the Ordinance. *See* Section 2406.2(A) of the Ordinance. One of the requirements for a master site planned development in the T-5 Oregon Village Overlay Area requires an applicant to "prepare and submit a master site plan with its application for conditional use." Section 2406.13 of the Ordinance. The master site plan "shall include[, *inter alia*,] . . . [a]ll existing land uses and lot lines within two hundred (200) feet of the proposed development, including the location of all public and private streets, drives or lanes, railroads, *historic sites* and other significant natural or man-made features." Section 2406.13(E) of the Ordinance (emphasis added).

In approving an application for conditional use, "[t]he Board shall impose such reasonable conditions as it deems necessary to effect the intent and purpose of [the] [O]rdinance and to protect the health, safety and welfare of the citizens of the

transportation, police and fire protection, public recreation, school facilities, and other public organizations and systems.

(5)     That the proposed use will not have a substantial adverse effect on the health and safety of the citizens of the Township when such use may present a danger from fire, explosion, electrocution, pollution, asphyxiation, or other similar dangers.

(6)     That the proposed use will not have a substantial adverse effect upon adjacent properties. Among any other effects on adjacent properties, proposed uses shall not injure or detract from the use or enjoyment or value of the adjacent properties.

(7)     The compatibility of the proposed use with the appearance and general character of the immediate vicinity.

(8)     The compatibility of the proposed use with the Township Comprehensive Plan.

(9)     The proposed use shall be in the best interest of the Township and for the convenience of the community and shall not adversely affect the general welfare of the community.

12

Township." Section 2810.3(C) of the Ordinance. The stated purpose of the T-5 Oregon Village Overlay Area is

> to permit as an option in specific circumstances and by conditional use a coordinated master site planned development process which permits a mixture of medium and higher density residential development via providing a variety of dwelling types and a mixture of various office, commercial uses and hospitality services by capitalizing on the transportation opportunities and public utilities *while protecting the surrounding agricultural uses and historic character of the Village of Oregon*. The intent of the Board . . . in enacting the [T-5] Oregon Village Overlay Area [includes]:
>
> . . . .
>
> J. To protect and preserve *historical structures*.

Section 2406.1(J) of the Ordinance (emphasis added).

Section 503 of the Ordinance defines "historic building" as "[a] building which constitutes a[] historic resource and which is identified on the Historic Resources Map" and a "historic resource" as "[a] building, structure, site, district, or object which possesses historical significance based on its architecture or its association with one or more historical events or persons." The terms "historic structure" and "historic site," as used in Sections 2406.1(J) and 2406.13(E) of the Ordinance, however, are not defined within Section 503 of the Ordinance. Pursuant to Section 501 of the Ordinance, words not defined therein "shall take on the meanings as defined in the latest edition of the Merriam-Webster Collegiate Dictionary." Section 501 of the Ordinance further provides that "[w]ords and phrases shall be presumed to be used in their ordinary context, unless such word or phrase is defined differently." The Merriam-Webster Collegiate Dictionary defines "historic" as "famous or important in history" and/or "dating from or preserved from a past time or culture." Merriam-Webster Collegiate Dictionary, https://www.merriam-webster.com/dictionary/historic (last visited Dec. 10, 2021).

13

## C. Inclusion of Appellant's Bed and Breakfast
## on the Master Site Plan for the Project

Appellant argues that the Board abused its discretion and/or committed an error of law by approving Developers' Application because Developers failed to include Appellant's bed and breakfast, which is located within two hundred feet of the Project, as a historic site on their master site plan for the Project as required by Section 2406.13(E) of the Ordinance. In other words, Appellant suggests that Section 2406.13(E) required Developers not only to identify Appellant's bed and breakfast on the master site plan for the Project but also to label specifically Appellant's bed and breakfast as a historic site. Appellant contends that Mr. Harris identified Appellant's bed and breakfast as a historic residence located adjacent to the Project, but the Board improperly rejected Mr. Harris's unrebutted testimony on the basis that "historic resources" and "historic buildings," which are defined terms in the Ordinance, are not included within the meaning of Section 2406.13(E)'s reference to "historic sites," which is not a defined term in the Ordinance.

In response, Developers argue that they properly identified the required land uses and lot lines within two hundred feet of the Project, including Appellant's bed and breakfast, in their master site plan for the Project as required by Section 2406.13(E) of the Ordinance. Developers suggest that it was not necessary for them to do more than simply identify Appellant's bed and breakfast on the master site plan because Appellant's bed and breakfast is not an established, recognized historic site "under the [Merriam-Webster's] dictionary definition [or] the Board's interpretation of its Ordinance"—*i.e.*, there is no evidence of record to establish that Appellant's bed and breakfast is "famous or important in history"—and, even if it was, Section 2406.13(E), by its plain language, merely requires that the land uses and lot lines be "identified" on the master site plan and not "labeled."

14

In reply, Appellant argues that Mr. Harris's testimony was sufficient to establish the necessary proof that her bed and breakfast is a historic site that Developers were required to identify on the master site plan for the Project. In support thereof, Appellant suggests that, contrary to Developers' arguments, she "was not required to present evidence of the historical significance [of her bed and breakfast] based on its architecture or association with a historical event or persons," but rather, "[f]or purposes of the . . . Ordinance, it is sufficient for [her] bed and breakfast to be listed on the . . . Township['s] Historic Sites Inventory, which [Appellant suggests] is the historic resources map." (Appellant's Reply Br. at 10.)

We agree with Common Pleas that the Board committed an error of law by failing to include "historic sites" under the definition of "historic resources." Section 501 of the Ordinance requires that the term "historic site" be "used in [its] ordinary context." The ordinary context of "historic site" certainly must include any sites possessing historical significance. Interestingly, the definition of "historic resource" set forth in Section 503 of the Ordinance specifically includes "[a] . . . *site* . . . which possesses historical significance based on its architecture or its association with one or more historical events or persons." (Emphasis added.) To say that "historic sites" cannot be included within the definition of "historic resource" simply because the term "historic resource" is not utilized within Section 2406.13 of the Ordinance is clearly erroneous. Given, however, that Common Pleas did not take any additional evidence and was, therefore, required to review the matter simply to determine whether the Board abused its discretion or committed an error of law, *see 1050 Ashbourne Assocs., LLC*, 167 A.3d at 831 n.6, Common Pleas exceeded its authority when it conducted its own independent analysis of whether, based on the evidence of record, Appellant's property is a historic site, resource, or structure. For

these reasons, a remand to the Board is necessary for the Board to specifically consider/address whether Appellant presented sufficient evidence to demonstrate that her property should have been classified as historic. If, on remand, the Board concludes that Appellant's property is a historic site, it must be labeled as such on the master site plan for the Project as required by Section 2406.13(E) of the Ordinance.

## D. Intent of the T-5 Overlay Area to Protect and Preserve Historical Structures

Appellant argues that the Board abused its discretion and/or committed an error of law by approving Developers' Application because Developers failed to demonstrate how the Project complied with the intent of the T-5 Oregon Village Overlay Area to protect and preserve the historic structures located within the vicinity of the Project, including her bed and breakfast. More specifically, Appellant contends that, despite the fact that Mr. Harris, the only expert on historic resources and structures to testify before the Board, identified approximately thirty-five historic properties located within the Village of Oregon, Developers' Application was limited to only those historic structures located on the Property and did not include any discussion of how Developers intended to protect and preserve any of the off-Property historic structures. Appellant further contends that, while the Board may have concluded that the reduction in traffic on East Oregon Road and Creek Road would protect historical resources located within a close proximity to the Project, the Board did not cite any evidence of record to support that conclusion.

In response, Developers argue that the record contains substantial evidence to support the Board's finding that the Project complied with the intent of the T-5 Oregon Village Overlay Area to protect and preserve historic structures. Developers contend that Appellant's argument to the contrary is unpersuasive

16

because: (1) there is no evidence of record to establish that Appellant's bed and breakfast is a historic structure; (2) Appellant failed to demonstrate that the Project would have a substantial adverse effect on her bed and breakfast;[6] and (3) the Board did in fact consider the ways in which the Project would protect and preserve historic structures outside the Project's boundaries when it concluded that the Project would result in decreased traffic on Creek Road.

We must first note that, contrary to Appellant's contentions, Developers were not required to demonstrate how the Project complied with the intent and purpose of the T-5 Oregon Village Overlay Area to protect and preserve the historic structures located within the vicinity of the Project. As explained more fully above, compliance with the intent and purpose of an ordinance is typically a general criteria unless the ordinance, by its terms, makes it a specific requirement—*i.e.*, a specific criteria. *See Gouwens*, ___ A.3d at ___, slip op. at 10. The burden to prove compliance, or in most instances noncompliance, with the general criteria of an ordinance is on the objectors. *See White Advert. Metro, Inc.*, 453 A.2d at 33. We

___

[6] Developers further contend that while Appellant initially contested the Board's determination that the Project would not have a substantial adverse impact on her bed and breakfast before Common Pleas, Appellant has since abandoned and waived that issue on appeal by omitting it from the "Statement of the Questions Involved" section of her brief to this Court. (Developers' Br. at 18.) Developers, nevertheless, suggest that Appellant has attempted "to shoehorn the adverse impact argument" into her argument regarding the intent of the T-5 Oregon Village Overlay Area. (*Id.* at 19.) Even if we were to consider Appellant's adverse impact argument, however, such argument would fail. While Mr. Harris may have expressed concern that "the historic structures [surrounding the Project] would suffer some vibration from the excavation and construction downstream as a course of the construction, as well as the increase in traffic that probably would be attendant to the [Project]," Mr. Harris admitted that he did not personally evaluate any of the historical structures, including Appellant's property, to determine whether they would actually be affected by the construction. (R.R. at 789.) Appellant's concerns about the potential harm to her property from vibration are likewise unsubstantiated and speculative, and her concerns relative to the potential harm to her bed and breakfast business are irrelevant, because it is her building that may be historical, not her business.

17

have reviewed Section 2406.1 of the Ordinance and have found no language contained therein that makes proving compliance with the intent and purpose of the T-5 Oregon Village Overlay Area a specific requirement that Developers were required to establish to obtain conditional use approval for the Project. Thus, the burden to prove noncompliance therewith—*i.e.*, that the Project is not in "harmony with the spirit, intent or purpose of the [O]rdinance" to protect the historic character of the Village of Oregon and to protect and preserve historical structures—rested with Appellant and/or the other objectors. *See White Advert. Metro, Inc.*, 453 A.2d at 33.

Based upon our review of the Board's decision, we cannot ascertain whether the Board properly considered whether Appellant and/or the other objectors met their burden in this regard. The only finding that the Board made with respect to the protection and preservation of historical structures was in Finding of Fact 51(a)(10):

> With the amendment of the conditional use plan, the existing barn, which is the only historical resource within the master site planned development, and the farmhouse on Site A are being retained. The reduction in traffic on East Oregon Road and Creek Road will also protect historical resources located in close proximity to these roads.

A discussion of the impact that the reduction in traffic would have on the historic resources located in close proximity to East Oregon Road and Creek Road does not adequately consider whether the Project is in compliance with the intent and purpose of the T-5 Oregon Village Overlay Area. Thus, a remand to the Board is necessary for the Board to specifically consider whether Appellant and/or any of the other objectors met their burden of proving that the Project is not in harmony with the intent and purpose of the T-5 Oregon Village Overlay Area to protect the historical character of the Village of Oregon and to protect and preserve historical structures.

### E. Board's Duty as Trustee Under the ERA

Appellant argues that the Board abused its discretion and/or committed an error of law by approving Developers' Application because the Board violated its duty as trustee under the ERA by failing to require Developers to preserve and protect her bed and breakfast and to include it as a historic site on the master site plan for the Project. In response, Developers argue that the ERA has no application here because: (1) Appellant's bed and breakfast is not an environmental or natural resource; (2) there is no evidence of record to establish that Appellant's bed and breakfast has any historical value; and (3) Appellant failed to demonstrate that her bed and breakfast would be adversely impacted by the Project.

We question whether the ERA is even applicable to the facts and circumstances presented in this case. To the extent that it is, however, any resolution of this issue is closely linked to and could potentially turn on how the Board, on remand, addresses whether Appellant and/or the other objectors met their burden of establishing that the Project is not in compliance with the intent and purpose of the T-5 Oregon Village Overlay Area to protect the historical character of the Village of Oregon and to protect and preserve historical structures. For these reasons, we will not address Appellant's arguments relative to the ERA at this time.

## IV. CONCLUSION

Accordingly, we reverse Common Pleas' order and remand the matter to Common Pleas with instructions to vacate the Board's decision and remand the matter to the Board for the issuance of a new decision consistent with this opinion.

_____
P. KEVIN BROBSON, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mary Bolinger,            :

           Appellant        :

           :

           v.            :    No. 1217 C.D. 2020

           :

Board of Commissioners of      :

Manheim Township, Manheim    :

Township, RV Holdings, LP and   :

Hurst Family Estate, LP       :

# **O R D E R**

AND NOW, this 13th day of December, 2021, the order of the Court of Common Pleas of Lancaster County (Common Pleas), dated October 27, 2020, is REVERSED, and the matter is remanded to Common Pleas with instructions to vacate the decision of the Board of Commissioners of Manheim Township (Board) and remand the matter to the Board for the issuance of a new decision consistent with the attached opinion.

Jurisdiction relinquished.

 

 

                  _____

                  P. KEVIN BROBSON, President Judge